## Wytheville.

HUDSON v. MAX MEADOWS LAND & IMPROVEMENT Co.

JULY 6, 1899.

1. SPECIFIC PERFORMANCE—*Parol Contract—Part Performance.*—A court of equity will compel the specific performance of a parol contract for the sale of real estate where the contract is certain and definite in its terms, and there have been such acts of part performance that neither party can be restored to his former position.

2. SPECIFIC PERFORMANCE—*Encumbrances.*—A mere encumbrance on real estate is not sufficient to bar a suit for specific performance, either by the vendor or vendee, if the encumbrance may be readily removed without injury to either party by the application of the purchase money thereto.

3. CHANCERY PLEADING AND PRACTICE—*Specific Performance—Encumbrances—Parties—Reference as to State of Title.*—As a general rule strangers to a contract for the sale of real estate should not be made parties to a suit for specific performance, but if, by making the encumbrancer a party, the title to the land can be cleared in a reasonable time, and no injury done to the parties, the court will permit it, in order to enable it to enforce the contract. If need be, the court may, in a proper case, refer the cause to a commissioner to ascertain the state of the title.

Appeal from a decree of the Circuit Court of Wythe county, pronounced March 10, 1899, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*Hudson & Hudson* and *Blair, Poage & Blair,* for the appellant.

*Bolling & Kegley*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Wythe county, dismissing on demurrer the bill of appellant, filed against the Max Meadows L. & Imp. Co., for the specific execution of an alleged parol agreement for the exchange of real estate.

It is alleged that a contract was made between the complainant and the defendant on the 28th day of April, 1898, whereby the defendant agreed to sell, or give in exchange, to complainant, a tract of land containing 460¾ acres, more or less, the metes and bounds of which are fully set out in the bill, and that, in consideration of the tract of land thus fully described, complainant agreed to sell and convey, and the defendant agreed to take in exchange, certain property from complainant, also fully set out and described in the bill, consisting of a sash, door and blind factory, and equipments, with the lot on which the factory is situated, three small houses also on the factory lot, and certain other houses and lots situated at Max Meadows; that the tract of land which the defendant was to convey to the complainant was valued at $26.50 per acre as to a part, and $16 per acre as to the residue, aggregating $10,856.50 for the whole; that the property complainant was to convey to defendant was valued at $6,600, and he was to pay the defendant the balance, $4,256.50, in cash. The bill further alleges that the terms of the contract were clear, well understood, and definite in their character; that, while the contract was not then reduced to writing, there was such part performance thereof as took it out of the statute in regard to parol agreements; that is to say, that at the time of the contract complainant was put in possession of, and still holds, the timbered portion of the tract of land he was to get from the defendant, which contains about 127 acres, and

possession of the residue of the tract was to be given him as fast
as the crops thereon could be harvested, and possession of all was
to be given him not later than November 1, 1898; that com-
plainant not only took possession of the timbered portion of
the land in pursuance of the contract, but cleared much of it,
grubbed and improved other portions with fences, &c., with the
full knowledge of the defendant, and as fast as crops were har-
vested he was given possession of the other; that at the time
the trade was closed, complainant gave the defendant possession
of the factory and lot, and turned over to it the keys to the
factory which are now held by it, and that the defendant not
only accepted possession of the factory and the houses on that
lot, but took most of the belting off the machinery in the fac-
tory, and the pulleys, tools, and other equipment from the fac-
tory, and used them in other parts of the defendant's works, so
that complainant cannot be put in *statu quo;* that possession of
the other buildings of the complainant, included in the exchange,
was given to the defendant, except that complainant was allowed
by the defendant to occupy the dwelling-house for a short while,
and that so fully was the contract consummated that the de-
fendant had the factory and another of the houses turned over
by complainant insured for its own benefit, and plats of the land
sold or exchanged to complainant were made by the defendant,
and a deed for the land to complainant was prepared at the in-
stance of the defendant.

The bill further states that, at the time of the sale or exchange,
it was stated by the officers of the defendant that there were some
encumbrances on the tract of land which complainant was to get,
but he was also told by the company's general manager (with
whom, and the president of the company, complainant made
the contract) that the company was in a condition to give him
a clear title, and that he should have a clear title to the land.

It is further alleged that complainant, from the date of the
contract, has been, and is now, ready, willing and eager to

comply on his part with its terms, and has frequently, before the institution of this suit, offered to do so, by proposing to make the necessary deeds to the defendant for the houses and lots which, by the contract, he was to convey to the defendant; that complainant has been ready and able, and is still, to pay the balance due from him on the land in cash; but, from some cause not known to complainant, the defendant has delayed removing the encumbrances upon the tract of land which it was to convey to the complainant, and to make complainant a clear title to the land, and refuses now to make him a clear title, free from encumbrances, as it expressly agreed to do.

The bill then sets out that complainant is advised that there are two deeds of trust upon the tract of land in question, amounting to about $15,000, but that he is informed by agents of the defendant that payments have been made on the debts secured by these trust deeds, and that probably all has been paid, &c.

Finally, the bill states that complainant formally files and tenders with his bill to the defendant his deeds, with covenants of general warranty, conveying to defendant all the lots sold to it in exchange for the tract of land he, complainant, was to get from the defendant, &c.

The prayer of the bill is that the contract of exchange made between complainant and defendant be specifically enforced; that the defendant be compelled to make him (complainant) a deed to the land sold him in exchange, clear of all encumbrances; that the property sold by him in exchange to the defendant, or the proceeds of its sale, together with the cash he was to pay, be applied to the removal of the encumbrances, if they are sufficient, but if the defendant cannot remove the encumbrances that then the court will protect complainant from loss, and not allow said property and cash to be so applied; that complainant have reserved to him all necessary remedies and redress against the defendant, if by any possibility it should occur that the defendant cannot remove the encumbrances and make com-

plainant a clear title to the tract of land he claims; and that
the deeds which complainant files with his bill and tenders to the
defendant be held in escrow until complainant shall receive a
good and valid deed from the defendant.

Upon what ground the demurrer to the bill was sustained
does not appear. It is contended, however, that because of the
encumbrances set out in the bill it does not make a case which
a court of equity can specifically enforce, as the encumbrancers
cannot be made parties to this suit, and that the bill shows that
the complainant can be compensated in damages for any injury
he sustained by reason of the failure of the defendant to comply
with the alleged contract.

We are of opinion that upon neither of these grounds should
the demurrer have been sustained. By the demurrer all of the
allegations of the bill are admitted to be true, and they set out
a contract certain and definite in its terms, and the acts in part
performance refer to, result from, and are alleged to have been
made in pursuance of the contract, and are such as to show, if
sustained by the proof, that neither party can be restored to the
position in which he stood before the making of the contract in
question.

It is not a fatal objection to a bill of this character that it
shows that there are encumbrances outstanding upon the property
the complainant claims and asks that the defendant be required
to convey to him by a title clear of the encumbrances; and even
if the bill prayed that the encumbrancers be made parties de-
fendant, it should not be dismissed on demurrer.

In *Stimson* v. *Thorn*, 25 Gratt. 278, the widow and heirs of
one of the vendors of the real estate, which was the subject of
the controversy, were brought in and made parties to the bill,
although they were not parties to the contract on which the
suit was brought, and specific performance was decreed because
it appeared at the hearing that the vendor was in a position to
convey a good title.

Says Pomeroy in his work on Contracts, sec. 483: " The general doctrine, as supported by the weight of American authorities, is that all persons who are interested in the enforcement of the contract *must* be, and all those directly and specifically interested in the subject matter *may* be joined as parties to the suit for the specific performance."

In the case of *Guild* v. *Atchinson T. & S. F. R. Co.*, 33 L. R. A. 81, it was held that " where an encumbrance can be removed merely by the application of the purchase money, and the court is able to provide for the conveyance of a clear title to the vendee, the mere fact that encumbrances exist which the plaintiff (vendor) has not removed, or even is unable to remove without the application of the purchase money for that purpose, will not prevent a decree for a specific performance."

The rule there stated applies as well where the suit is brought by the vendee against the vendor as when the reverse is the case, and if this rule were not adhered to a mere encumbrance upon the property would be sufficient to defeat a suit for the specific execution of a contract for its sale. As a general rule, strangers to a contract for the sale of land are not necessary parties, and are often improper parties, but this rule is subject to exception, and in many cases it has been held that encumbrancers are proper parties, even at the suit of the vendor, if by making them parties the title to the land can be cleared in a reasonable time, and without injury to the vendee. Fry on Spec. Per., sec. 183 and authorities cited.

In the case of *Garnett* v. *Macon*, 6 Call 308, Campbell, a stranger to the contract, and the holder of a lien on the property in question, the validity of which was denied, was made a party defendant, and it was held he was a proper party. In the opinion by Marshall, C. J., it was said: " All parties are now before this court, and if a specific performance should be decreed the title which can be made to Macon will undoubtedly stand clear of Campbell's lien; the question therefore is whether the ·

contract ought now to be enforced. It has been repeatedly declared, both in the courts of England and of this country, that time is not of the essence of the contract; and that specific performance ought to be decreed if a good title can be made at the time of the decree."

It was in that case clearly indicated that when it was necessary to bring parties holding a lien upon the subject matter of the controversy into a suit for specific performance, so that the court might be put in the position to enable it to specifically enforce a contract, without injury to either party thereto, this should be done, and that where there is a cloud on the title, or the legal title is outstanding, or if there are encumbrancers, the parties interested may be brought before the court, and the rights of all determined.

In *Beverly* v. *Lawson*, 3 Munf. 317, it was held that, where a bill in equity is exhibited by the vendor of land against the purchaser for specific performance, if the purchaser objects to the title, and it appear doubtful whether the plaintiff can make such a title as would authorize a decree for specific performance, or other relief, on giving bond to guard against remote or improbable contingencies, the title ought, *of course*, to be referred to a commissioner to be examined and reported upon.

In the case of *Jackson* v. *Liggon*, 3 Leigh 174, the court clearly recognized the rule that the court would not deny specific performance of a contract before a reference to ascertain the state of the title to the property in controversy, or decree specific performance without an inquiry as to the state of the title, if it appeared necessary.

The question always is whether or not the complainant has a contract which the court can and will enforce. To enable the court to determine this question, we can see no reason why a reference to ascertain the state of the title to the property in question should not be made, nor why parties interested in the subject matter should not be made parties to the suit, if neces-

sary, although they were not parties to the contract sought to be enforced, but mere encumbrancers or lien holders. The fact that an encumbrancer is brought before the court, that the amount of his encumbrance may be ascertained, does not necessarily involve the enforcement or foreclosure of his encumbrance. His lien or encumbrance on the property is not prejudiced by merely bringing him before the court in order to ascertain the amount or character of his encumbrance.

The prayer of the bill in this case is not that the encumbrances on the property be enforced or foreclosed, but that the amount due thereon, if any, may be ascertained, so that it may be determined whether or not the cash and the property the defendant is to get from the complainant will be sufficient to discharge the encumbrances, whereby the complainant can have a title to the property free from encumbrances, as the defendant agreed he should have.

It follows that the decree of the Circuit Court of Wythe county must be reversed and annulled, and this court will enter such decree as that court should have entered, overruling the demurrer to appellant's bill, and remanding the cause to be proceeded with to a hearing on its merits.

*Reversed.*