# Wytheville

GEORGE S. KEMP v. JOHN M. MILLER, JR.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

664

The opinion states the case.

*Smith & Gordon,* for the plaintiff in error.

*Page & Leary,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

By contract dated February 28, 1929, George S. Kemp, plaintiff in error, purchased from John M. Miller, Jr., defendant in error, "provided the title is free from valid objections," a certain dwelling house and lot on Seminary avenue, in the city of Richmond, at the price of $75,000, to be paid upon delivery to the purchaser of the possession of the property on or before May 1, 1929. This and other property had formerly been purchased by J. R. Paschall and Thomas Gresham from Lewis Ginter Land and Improvement Company, and in the adjustment of the purchase between them the real estate in question was conveyed to Gresham, who conveyed it to Miller.

Upon examination of the title, Kemp's attorneys reported that subsequent to the conveyance by Gresham to Miller certain judgments amounting to a large sum were recovered and duly docketed against Paschall, which, for reasons appearing of record, in their opinion rendered Miller's title imperfect and objectionable. Miller insisted that the title was good and the objections groundless, but Kemp refused, upon the advice of his attorneys, to accept the title until the alleged objections were removed and the title cleared by Miller. Kemp was, however, anxious to get the property, provided a clear title was assured him, and Miller wanted to give him possession on May 1st. In this situation the following correspondence ensued between the parties:

"April 27, 1929.

"Mr. John M. Miller, Jr.,

"Richmond, Virginia.

"Dear Mr. Miller:

"Referring to my contract for the purchase of your property in Ginter Park, and more especially to the objection to the title reported by my counsel, which was the subject of our conversation yesterday.

"You recognize the necessity of my moving into the property on Wednesday next, since I have sold my present home, relying on your title being good.

"I think it fair that a reasonable time should be allowed to you to clear up the title, and I am ready to agree with you as to what is fair and reasonable under the circumstances. I suggest a period of say six months, provided that during the time I shall be permitted to occupy the premises at a rental per month of $375.00, which is at the rate of 6 per cent per annum on $75,000.000, the understanding between us being that my occupying the premises is without prejudice to either your rights or my rights.

"At the time in the interim that the title is cleared to the satisfaction of my attorneys, I shall promptly pay to you the amount of $75,000.00 agreed on upon receipt of

proper deed therefor, in which event the present arrangement outlined in this letter would be terminated.

"I hope this will be acceptable to you. You have been so extremely courteous to me, I am anxious to show my appreciation of same.

"Very truly yours,
"GEO. S. KEMP."

"April 27, 1929.

"Mr. George S. Kemp,
  C/o Messrs. Bryan, Kemp & Co.,
    "Richmond, Virginia.
"Dear George:

"I submitted your letter with reference to the arrangement concerning the property, 3501 Seminary avenue, to my attorney. I may be able to give you a definite reply today, but more probably, Monday. I am sure we can work it out to our mutual satisfaction and I suggest that you make your plans to move on Wednesday.

Sincerely yours,
"JOHN M. MILLER, Jr."

"April 30, 1929.

"Mr. George S. Kemp,
  "Richmond, Virginia.
"Dear Mr. Kemp:

"Immediately upon receipt of your letter of the 27th inst., I referred the matter of objections to the title to the Ginter Park property, raised by your counsel, to Mr. T. C. Gordon, who examined and approved the title at the time I purchased the property from Thomas Gresham.

"I am advised that, after further careful consideration of the matter, Mr. Gordon, and other attorneys with whom he has consulted, are of the opinion that I acquired a clear fee-simple title to the property, and that I am in position to convey such a title to you.

"Arrangements have been made for a consultation with your counsel, Messrs. Nelson & Nelson, with a view of demonstrating to them the validity of the title and having

them withdraw their objections; and I sincerely hope that the purpose of this conference will be achieved.

"However, as lawyers do not always agree, it is necessary for us to consider and arrange a proper procedure, in the event of a disagreement.

"Being advised and believing that I am in position to convey to you a fee-simple title, free of valid objections, in accordance with the terms of your written contract of purchase, I am now and do herewith tender you a duly executed deed of conveyance to the property; and in the event and as is probable in the circumstances, you decline to accept the same and to pay the purchase price, I suggest that you move into the property Wednesday and occupy the same, but without prejudice to any of your rights.

"I will thereupon immediately bring a friendly suit for the purpose of having the court determine whether or not I have and can convey a good title to you, and should the decision of the court be in my favor, I would then expect you to take the deed and pay the purchase price.

"Pending such decision you are to pay me (as you suggested) the sum of $375.00 per month (being at the rate of 6 per cent per annum on the purchase price) and, in the event the decision of the court sustains the validity of the title, you are to assume the payment of the taxes on the property, prorated as of and from May 1, 1929, and you are also to assume the insurance on the premises, the premiums to be prorated on the same basis.

"In the event that the court should decide against the title you are to deliver over to me the possession of the property in the same good order and repair as you now find it, ordinary wear and tear excepted.

"It is also to be understood that the same arrangement shall continue in effect, in the event that either party should appeal from the decision of the lower court.

"Please be assured that I regret the circumstances giving rise to this arrangement, and that I have no other

desire or purpose than to assure you, in the only way lawfully open, of a valid title to the property.

"If this arrangement is satisfactory, I shall be obliged if you will so indicate by signing the carbon copy of this letter herewith enclosed.

"Very sincerely yours,
"JOHN M. MILLER, JR."

"April 30, 1929.

"Mr. John M. Miller, Jr.,
"Richmond, Virginia.
"Dear Mr. Miller:

"I am in receipt of your letter of April 30, 1929, in reply to my letter of April 26, 1929. As stated in my letter, it is agreeable to me to move into the property on the terms you state, without prejudice to any of my legal rights, until such time as you shall have cleared up the objections to your title.

"My understanding with you, however, is that you are to give me a satisfactory title to the property. Until you do so, I will agree to pay you the sum of $375 per month, and in the event of your inability to tender me such a title after the lapse of a reasonable time, say six months, I shall restore possession of the property in the same good order and repair as I find it, ordinary wear and tear excepted. It was my understanding, however, and your statement to me, that you would make the title satisfactory to me as well as to my attorneys, and I have such confidence in you that this assurance is enough for me.

"I shall accordingly move into the property tomorrow, and in the event the assurances as to the satisfactory title are made good, I will assume the payment of the taxes on the property, pro-rated as of and from May 1, 1929, and the insurance on the premises, the premiums to be pro-rated on the same basis.

"I regret exceedingly that any question should have arisen as to the title, but you surely do not expect me to take title to a property when the same will no doubt be questioned in the event of any application by me for a

loan on the property or in the event of my offering the same for resale to some other purchaser. The only kind of title that is satisfactory to me, to use your expression, is a title that will be readily acceptable to some other purchaser or to some insurance company in the event I should apply for a loan. If I understand you correctly, it is not your desire that I be required to take any other kind of title.

"With reference to a friendly suit to settle the matters at issue, I shall regret the same very much as putting me to unnecessary expense and annoyance, but I, of course, appreciate the fact that in this matter, you will be guided by the advice of your counsel.

"Sincerely yours,<br>"GEORGE S. KEMP."

"May 1, 1929.

"Mr. George S. Kemp,

"Richmond, Virginia.

"Dear Mr. Kemp:

"Acknowledging receipt of yours of the 30th April, I beg to assure you again that I have no intention or desire to convey to you anything less than a valid title to the real estate in question, in accordance with the terms of our written contract of sale and purchase, and I am advised by my counsel that the executed deed which I tendered you will vest such title in you.

"However, it appears that (on the advice of your counsel) you do not agree to this proposition, and the only way of deciding the matter is to have the court pass upon the question.

"It is, therefore, my intention to promptly bring a friendly suit for the purpose, and I am advised by my counsel that, in usual course, such suit could be heard and decided within sixty to ninety days. Of course, if an appeal were taken by either party, it might be a year or longer before the Supreme Court rendered a decision on the appeal.

"It will, therefore, be entirely agreeable to me for you to move into and occupy the premises, without prejudice to any of your rights, under the terms stated in my letter to you of the 30th April, and to remain in such occupancy until the matter of the title is finally disposed of by court decision. This may or may not take longer than six months, and I do not undertake to guarantee such decision within that length of time. All I can say is that there will be no unreasonable delay on my part in bringing or conducting such suit.

"Sincerely yours,
"JOHN M. MILLER, JR."

There was another letter from Miller to Kemp dated April 30, 1929, relating to the sale by Miller to Kemp of certain household effects, which contained the following paragraph:

"It is further understood that if I do not deliver to you satisfactory title to the property, R/E, the above articles are to be returned to me."

Kemp took possession of the property on May 1, 1929, and shortly thereafter Miller instituted in the Chancery Court of the city of Richmond a suit against Kemp for specific performance of the contract of sale. The bill merely stated that Miller possessed a fee-simple title free of liens to the real estate in question; that he and Kemp had entered into a written contract for the sale and purchase of said real estate at the price of $75,000, and that he tendered Kemp a good and sufficient deed to the property conveying a valid title free from encumbrances of any sort, but Kemp refused to accept the deed and pay the purchase price.

Kemp filed an answer setting forth in detail the judgments against Paschall which he contended constituted clouds on the title, and asked that Miller be required to make Paschall and his creditors parties defendant to the bill and have their rights determined by the court, and in the alternative, asked that his answer be treated as a cross-bill and the holders of said liens be made parties,

etc. Paschall and his said creditors were made parties at Kemp's instance, and upon the hearing the chancellor, being of the opinion that the judgments against Paschall constituted clouds upon the title, dismissed Miller's bill. Miller appealed, whereupon the decree of the chancery court was reversed, and the cause remanded with directions to said court to enter such decree as might be necessary to enforce the specific performance of the contract of sale between the parties according to the prayer of the bill. *Miller* v. *Kemp,* 157 Va. 178, 160 S. E. 203, 84 A. L. R. 980.

In accordance with this mandate, on December 2, 1931, the chancery court entered a decree to effectuate specific performance of the contract of sale. From this decree Kemp appealed, when the said decree was affirmed and the cause again remanded. *Kemp* v. *Miller,* 160 Va. 280, 168 S. E. 430. On March 28, 1933, the chancery court entered final decree in the cause, and the same was dismissed from the docket.

Upon entry of the decree ending the litigation engendered by the suit for specific performance, Miller brought this action to recover from Kemp the principal sum of $3,647.36, the amount he had expended for taxes and insurance, pursuant to the agreement embraced in the letters hereinbefore set forth, between May 1, 1929, and the entry of said final decree.

In addition to the general issue, Kemp filed special pleas of *res adjudicata*, estoppel, and set-off, claiming under the last named plea the principal sum of $3,457.48 which he had paid out for counsel fees and other expenses in the specific performance suit, and claimed he was entitled to recover from Miller as damages for Miller's failure to clear the title to the real estate before instituting the suit for specific performance. The court rejected the pleas of *res adjudicata* and estoppel, and submitted the issues presented by the plea of set-off to the jury. The jury rendered a verdict in favor of the plaintiff, Miller, for $281.42, same being the difference between the principal sum sued

for by Miller and the amount claimed by Kemp by way of set-off. Upon Miller's motion the court set aside the verdict, and, being of the opinion that there was sufficient evidence to enable it to decide the case upon its merits, disallowed the sum of $2,500 paid out by Kemp for counsel fees which had been allowed by the jury, and entered judgment for the plaintiff for the sum of $2,781.42. To this judgment Kemp secured this writ of error.

The first assignment of error to be considered relates to the action of the court in rejecting the plea of *res adjudicata* filed by Kemp, which is based upon the ground that the final decree in the specific performance suit concluded and disposed of all claims and demands of the plaintiff against Kemp growing out of the contract of sale of the real estate, and that plaintiff is, therefore, estopped to claim the amount expended by him on account of taxes and insurance. The general rule is:

"When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties." 15 R. C. L., section 438, p. 962; *Gimbert* v. *Norfolk Southern R. Company,* 152 Va. 684, 148 S. E. 680; *Choate* v. *Calhoun,* 153 Va. 52, 149 S. E. 470.

This doctrine does not apply, however, where the second action between the same parties is upon a different claim or demand. In *Brunner* v. *Cook,* 134 Va. 266, 114 S. E. 650, 651, *Cromwell* v. *County of Sac,* 94 U. S. 351, 24 L. Ed. 195, is quoted with approval, as follows:

"But where the second action between the same parties is upon a different claim or demand, the judgment in the

prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

The contract sued upon and which constituted the cause of action in the specific performance suit was the contract of February 28, 1929, whereby Kemp agreed, "provided the title was free from valid objection," to purchase Miller's home on Seminary avenue. The contract sued upon, and which constituted the cause of action in the present proceeding is the contract embodied in the letters of April 30 and May 1, 1929, whereby it was agreed between the parties that Kemp should take possession of the property as of May 1, 1929, and that pending the litigation to determine the validity of Miller's title to the property, Miller was to pay out and advance taxes and insurance premiums falling due on said property, to be refunded Miller by Kemp in event litigation over the validity of Miller's title was finally determined in Miller's favor. The contract sued upon in the instant case, therefore, constituted an entirely separate and distinct agreement and cause of action from that contained in the original contract of sale, and was merely supplemental thereto.

Nor, moreover, as said by counsel in their brief, "was the contract or cause of action here sued upon or the rights of the parties thereunder in any way brought into, passed upon, considered or determined in said specific performance suit."

The only reference to the rental contract embraced in the letters, which is contained in the pleadings in the specific performance suit, is the following statement in

Kemp's answer: "The respondent further answers that he is now occupying the real estate on a rental basis by agreement with the plaintiff, pending the time when he can secure such a title thereto as the plaintiff desires to give and he is willing to take, and by special agreement, this is without prejudice to the rights of either of the parties."

And in the stipulation of counsel in the specific performance suit is found this:

"10—The said George S. Kemp is occupying the said real estate on a rental basis by agreement with the plaintiff and without prejudice to the rights of either party."

It is therefore obvious that it was the intention of the parties to treat the rental contract upon which this action is founded as separate and distinct from the contract of purchase, and it is equally manifest there was nothing in the pleadings sufficiently definite as to the rental agreement to enable the chancery court to determine the rights of the parties thereunder in the specific performance suit.

We are, therefore, of the opinion that the trial court was right in rejecting the plea of *res adjudicata* filed by Kemp in bar of this action.

It is next contended that the trial court erred in rejecting the defendant's plea of estoppel. This plea is based upon the ground that in the deed from Miller to Kemp conveying the real estate in question were merged all agreements and negotiations between the parties concerning said real estate, and therefore, plaintiff's claim for taxes and insurance premiums sued for in this action were concluded by said deed and Miller estopped from setting up such claim.

In the case of *Charles* v. *McClanahan,* 130 Va. 682, 685, 108 S. E. 858, 859, the rule is thus stated:

"In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are merged in the final and formal contract executed by the parties, and when a deed has been deliv-

ered and accepted as performance of an antecedent contract to convey, the contract is merged in the deed."

The deed in the instant case, therefore, merged and extinguished the contract of sale of February 28, 1929, but it seems plain that the rule above referred to does not apply to the deed in the instant case because it was not made or accepted, nor intended by the parties to be made or accepted, in pursuance of the contract embraced in the letters of April 30th and May 1st. The deed which was finally delivered Kemp pursuant to the decree of the court in the specific performance suit was first formally tendered to Kemp on May 1, 1929, and had no bearing whatever upon the terms or the agreement under which Kemp should occupy the property until the question of the title at issue between them was finally settled. As previously stated, these letters themselves plainly show that the only object of the parties was to reach some agreement by which Kemp could occupy the property without prejudice to his rights or those of Miller while the litigation was pending, and did not constitute any part of the negotiations for the sale of the property which were concluded by the deed. We think the trial court was also plainly right in disallowing the plea of estoppel.

It is next complained that the court erred in refusing instructions C, D, F, and G requested by the defendant Kemp, and in giving of its own motion instruction XY. Instructions C, D, E, and F, in effect, tell the jury that if they believe from the evidence that Kemp agreed to become responsible for the taxes and insurance premiums only on condition that Miller would furnish him a title that was satisfactory to him and his attorney, and that Kemp's occupancy of the residence should be without prejudice to any of his rights, and Miller failed to furnish such a title until after the suit for specific performance had been finally determined by the Supreme Court of Appeals, then Kemp was not obligated to pay any taxes or insurance premiums on the property pending the liti-

gation in the suit for specific performance, and so the jury should find for Kemp in this action.

While it is evident from the correspondence between the parties that Kemp was seeking to get Miller to agree to deliver him a title "satisfactory" to him and his attorney, instead of one free from valid objections, as provided in the original contract, Miller did not, however, agree to this and it is perfectly manifest from the whole correspondence that the parties could only have meant Kemp was to repay Miller for taxes and insurance paid out by him during the litigation referred to, when and if Miller conveyed to Kemp the title provided for by the original contract.

■ It was held by this court in *Miller* v. *Kemp* that the judgments against Paschall, "could not possibly affect" Miller's title; that Miller had and could convey to Kemp title to said property "free from valid objections"; that Kemp should be required to "accept said title and pay Miller therefor in accordance with his contract of purchase aforesaid." As stated, the correspodence between the parties shows that the understanding was that if it should be determined Miller's title was valid and he could convey to Kemp the title free from valid objections, Kemp thereupon would refund the taxes and insurance premiums paid by Miller. In view of the decision of this court, we think the understanding was complied with on Miller's part and he is, therefore, entitled to recover the taxes and the insurance premiums he had advanced. Moreover, it may be said that Kemp defined the title that would be "satisfactory" to him in his letter of April 30th, as "a title that would be readily acceptable to some other purchaser or some insurance company in the event I would apply for a loan." It appears from the record that upon Miller's title being finally declared by this court free from valid objection, its validity was actually insured by the Lawyers Title Insurance Corporation of Richmond.

■ Kemp further contends that he is not liable for the insurance premiums and taxes under the contract,

because it provides that his occupancy of the premises under the contract should be without prejudice to any of his rights. The argument advanced in support of this phase of the instructions is, as we understand it, that this provision of the contract placed the defendant in the same position as if he had not occupied the premises and he was not, therefore, liable for the taxes and insurance. The provision in the contract that Kemp's occupancy of the premises should be without prejudice to any of his rights, plainly refers to his rights under the contract of purchase of February 28, 1929. To say that this provision of the contract meant Kemp should not be liable for the taxes and insurance notwithstanding his occupancy of the premises would nullify the express terms and purpose of the contract under which he was given possession of the premises pending the litigation as to the title.

Instruction G tells the jury that if Kemp occupied the premises pending the suit for specific performance under the agreement with Miller that the title should be made satisfactory to Kemp and his attorney, and without prejudice to any of the defendant's rights, and that Kemp acting in good faith, declined to accept the title as unsatisfactory to him and his attorney, and subsequently the plaintiff caused to be delivered to the plaintiff the deed conveying the property, etc., then all prior negotiations between the parties touching the real estate were merged in the deed, and the jury should find for the defendant Kemp.

For reasons stated under the assignment of error relating to the plea of estoppel, this instruction was properly refused.

Instruction H tells the jury that if they believe the facts and circumstances therein set forth, then the jury should find for Kemp on his plea of set-off and assess as damages an amount that will cover the expenses to which the plaintiff was reasonably subjected in the suit for specific performance. The jury having found in favor of Kemp for the full amount claimed in his plea of set-off,

it is obvious that even if the instruction asked for was correct, the refusal to give it was harmless error.

■ Instruction XY given by the court of its own motion, which is objected to, sets forth the construction placed by the court upon the contract embodied in the letters, and is in the main in Kemp's favor. Without setting forth the instruction in detail, we deem it sufficient to say we find no prejudice in the instruction as far as Kemp is concerned.

■ It is next complained that the court erred in refusing to allow Kemp under his plea of set-off counsel fees he had paid in the specific performance suit. The rule in Virginia as to the recovery of counsel fees as damages is well established in *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875; *Parsons* v. *Harper,* 16 Gratt. (57 Va.) 64; *Wisecarver* v. *Wisecarver,* 97 Va. 452, 34 S. E. 56, and *Morgan* v. *Haley,* 107 Va. 331, 58 S. E. 564, 13 L. R. A. (N. S.) 732, 122 Am. St. Rep. 846, 13 Ann. Cas. 204, wherein it is held that except where the injury is wanton or malicious and exemplary damages are recoverable, the allowance of fees paid counsel for defending the original proceedings is not proper. The case of *Oelrichs* v. *Spain,* 15 Wall. 211, 231, 21 L. Ed. 43, cited in *Wisecarver* v. *Wisecarver, supra,* states the reasons for the rule as follows:

"There is no fixed standard by which the *honorarium* can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party, there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy, on the part of the court, to scale down the charges, as might sometimes be necessary. We think the principle of disallowance rests on a solid foundation,

and that the opposite rule is forbidden by the analogies of the law and sound public policy."

The refusal of the court to grant Kemp's motion to set aside the verdict and grant him a new trial is assigned as error. The argument in support of this assignment is in the main identical with the reasons given in support of the instructions which were refused by the court, which we deem it unnecessary to consider further.

The only question remaining for determination is Miller's cross-assignment of error, wherein complaint is made of the action of the court in allowing Kemp under his plea of set-off the amount paid out and expended by him in defense of the specific performance suit, with exception of the sum of $2,500 paid for counsel fees. In other words, Miller contends that he is entitled to recover the principal sum of $3,647.36 without any deduction on account of expenses incurred by Kemp in defending the specific performance suit.

As stated by counsel for Miller in their brief, while the lower court held that the attorney's fees expended by Kemp in the specific performance suit were not recoverable, it also took the view that "the other incidental expenses and costs awarded against him in that suit were recoverable, upon the general theory and premise that a suit for the specific performance of a contract is not the best and most approved method for removing a cloud from a title and that by the contract existing between Miller and Kemp, as evidenced by the letters passing between them, Miller had obligated himself to bring a suit convening all of the alleged lien creditors for the purpose of clearing said title without expense to said Kemp, and that Miller should not have sued for the specific performance of his contract."

It is insisted by counsel for Miller, that Miller had a right to institute a suit for specific performance against Kemp upon Kemp's refusal to comply with the contract of February 28, 1929; that under the facts and circumstances of the instant case such suit was a perfectly

proper form of procedure; that Miller never surrendered this right, nor agreed nor obligated himself not to bring a specific performance suit, or to bring any particular form of suit; and that neither Miller nor Kemp ever understood or agreed that the suit to be brought by Miller against Kemp would be without expense to said Kemp, but actually to the contrary.

It is, of course, undisputed that Kemp agreed to purchase the property, provided the title was free from valid objections, and that the objections which he offered constituted a cloud on Miller's title is also undisputed; that Miller insisted that these objections were groundless and the title perfectly valid is likewise undisputed. We think it also appears from Kemp's own letter of April 30th, that he understood Miller was to institute a friendly suit to settle the matters at issue, as to which Miller would be guided by the advice of his counsel; that the suit was to be against him, and that he would be put to some expense.

In view of these circumstances, we are unable to agree with the learned judge of the trial court in his construction of the contract that Miller had obligated himself to prosecute a suit for the purpose of clearing the title without any expense to Kemp.

It appears from the correspondence, however, that Miller did obligate himself to bring the question at issue between Kemp and himself, as to the title, before the court in order that the question might be determined one way or the other and finally settled. Notwithstanding this promise on Miller's part, he entirely failed to bring to the attention of the court the cloud upon the title which constituted Kemp's objection, but simply brought a suit for specific performance without mentioning in any way the objections to the title which caused the controversy. If he had in his suit for specific performance convened Paschall's creditors as he could have done under the authority of *Hudson* v. *Max Meadows Land, etc., Co.,* 97 Va. 341, 33 S. E. 586, it would have been

an entirely different situation, but he did not do this, or in any other way make any effort to bring the vital matter at issue before the chancery court. He, therefore, breached his contract in that respect.

Upon this subject we quote from the opinion of the Honorable Frank T. Sutton, Jr., judge of the trial court, which clearly expresses our views upon the immediate question involved.

"The proper way to *clear* the title to real estate is by bill in equity to remove a cloud. In such a case the party having the supposed right which constitutes the cloud is impleaded, and with such party before the court the controversial question is passed upon and the party is concluded by that decision. The matter then becomes *res adjudicata.* This is true with proceedings in the trial court. The purpose of a suit for specific performance is to make an unwilling purchaser take the title he has contracted for, and pay the purchase price. If there is a cloud upon the title, the bill should be dismissed, because (according to innumerable authorities) a court of equity never forces a clouded title upon an unwilling purchaser. Of course, if the court is satisfied the purchaser is using a pretended cloud as a pretense it will decree specific performance. Where, however, there is a *bona fide* cloud on the title, a court of equity will defer specific performance until the cloud is removed. It is obvious, therefore, that specific performance is not the remedy to remove a cloud. In Exhibit 6 Miller unmistakably said that his purpose was to assure Kemp in the only way left open of a valid title to the property.

"In *Hudson* v. *Max Meadows Land, etc., Co.,* 97 Va. 341, at page 346, 33 S. E. 586, this is said as to a situation very similar to the one in the instant case:

" '* * * As a general rule strangers to a contract for the sale of land are not necessary parties, and are often improper parties, but this rule is subject to exceptions, and in many cases it has been held that encumbrancers are proper parties, even in the suit of the vendor, if by mak-

ing them parties the title can be cleared in a reasonable time, and without injury to the vendee. Fry on Spec. Per., section 183, and authorities cited.'

"The court approved of such a procedure in that case.

"It will thus be seen that Miller had two ways of assuring Kemp of a valid title to the property, but he pursued neither, electing to call upon Kemp to take the title in its then condition.

"Sometimes in the practical working, when the cloud involves a purely legal question, and the cause reaches the court of last resort, a specific performance suit will under the doctrine of *stare decisis* accomplish a somewhat similar relief—that is to say, for most (but not all) practical purposes, the legal question is set at rest. But this is not as satisfactory as the remedy by suit to remove a cloud and it *was not the only way left open* for Miller to assure a valid title to the property. It is a well-recognized principle that a purchaser of a clouded title must remove the cloud at his own expense. Miller, after agreeing to clear the title, *in the only way left open,* over Kemp's protest, instituted a suit for specific performance to compel Kemp to take the title as it was. This bill did not bring to the attention of the court the controverted point. Kemp was in an awkward position. He had to accept the alternative of lying down or fighting. If Kemp did nothing, a decree by default would go against him in the suit for specific performance, and he would be obliged to accept a clouded title, for the disputed point would not have been passed on by the court. Had Miller won, the case could not have been taken to the Supreme Court by him, and there have received that court's approval, so that the doctrine of *stare decisis* would have become applicable, because Miller having prevailed in the trial court could not appeal; and further because the disputed point had not received the court's attention. Miller forced Kemp into the position of taking active steps to protect himself. Of course he needed counsel. It was necessary, therefore, that he file an answer setting

up the new matter, that is, the controverted point. And had Miller prevailed and Kemp felt aggrieved he (Kemp) would have had to take the initiative and appeal at the expense of time and money. It is thus apparent that Miller's method of procedure forced upon Kemp the necessity of employing counsel and bringing the disputed point to the attention of the court. In effect, Kemp was by this method of procedure maneuvered into a position where he had to bring a suit to remove a cloud. This he should not have been required to do."

Upon consideration of the whole case, we are of the opinion that the judgment of the trial court was right, and it is, therefore, affirmed.

*Affirmed.*

HOLT and HUDGINS, JJ., dissenting.