159 F.3d 630
 159 L.R.R.M. (BNA) 2814, 333 U.S.App.D.C. 40
 METROPOLITAN WASHINGTON AIRPORTS AUTHORITY PROFESSIONAL
FIREFIGHTERS LOCAL 3217, INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS, AFL-CIO-CLC, Appellant,
v.
METROPOLITAN WASHINGTON AIRPORTS AUTHORITY, Appellee.
 No. 97-7229.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 8, 1998.
Decided Nov. 13, 1998.
 
 Appeal from the United States District Court for the District of Columbia (97cv00930).
 Anton G. Hajjar argued the cause for appellant. With him on the briefs was Ruth E. Peters.
 Peter W. Tredick argued the cause for appellee. With him on the brief were Emily M. Yinger and N. Thomas Connally.
 Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 Separate concurring opinion filed by Circuit Judge KAREN LeCRAFT HENDERSON.
 SILBERMAN, Circuit Judge:
 
 
 1
 The Metropolitan Washington Airports Authority Professional Firefighters Association, Local 3217 appeals from a district court order dismissing the union's claim that the Authority's refusal to bargain over the installation of video surveillance breached the lease under which the airports are governed. Because the district court lacked jurisdiction to adjudicate the unfair labor practice claim, we affirm the dismissal.
 
 I.
 
 2
 The Metropolitan Washington Airports Act of 1986 (codified as amended at 49 U.S.C.A. §§ 49101-49112 (West Supp.1998)) authorizes the Secretary of Transportation to transfer responsibility for the operation of the Reagan National and Dulles airports from the Federal Aviation Administration to the Metropolitan Washington Airports Authority, a regional entity created for that purpose by the Virginia General Assembly and the District of Columbia City Council. The transfer of control, which took effect in 1987, was achieved by means of a 50-year lease between the Secretary of Transportation as lessor and the Authority as lessee. Jurisdiction is conferred on the district courts of the United States to compel the Authority to comply with the terms of this lease. 49 U.S.C.A. § 49104(c).
 
 
 3
 The Act obligates the Authority to "continue all collective bargaining rights enjoyed by employees [of the Airports] before June 7, 1987 [the date the lease took effect]." Id. at § 49104(a)(6)(D). Accordingly, in the lease, the Authority promised to "adopt and maintain an employment code" to assure that those collective bargaining rights would continue to be protected. LEASE OF THE METROPOLITAN AIRPORTS BETWEEN THE UNITED STATES OF AMERICA AND THE METROPOLITAN WASHINGTON AIRPORTS AUTHORITY, Art. 14.B. Using the regulatory powers conferred upon it jointly by the legislative authority of Virginia and the District of Columbia, the Authority, after notice and comment, adopted a Labor Code. The Code, which was subsequently ratified by the Virginia legislature, provides that allegations of unfair labor practices "shall be submitted" to an Unfair Labor Practices Panel, whose "power in this regard shall be exclusive," and that the findings of the Panel "shall be conclusive and binding" unless a petition for relief is timely filed with the appropriate Virginia Circuit Court. The Code also gives the Virginia courts jurisdiction to hear a complaining party's petition for enforcement of the Panel's decision.
 
 
 4
 After the Reagan National Airport fire station suffered recurring incidents of theft and damage to Authority property and equipment, the Authority's Police Department placed a video surveillance camera in the equipment bay of the fire station as part of its investigation of the incidents. Shortly after the installation several firefighters discovered the hidden camera, and the union filed an unfair labor practice charge alleging that the Authority had violated §§ 2.12(1)(a) and (e) of the Code (containing standard language requiring bargaining in good faith) by installing and using the video camera without first bargaining with the union over the implementation of the video surveillance. The union did not claim that the Authority's decision to conduct covert surveillance violated the Code, but, relying on our decision in American Federation of Government Employees v. FLRA, 702 F.2d 1183, 1188 (D.C.Cir.1983) (interpreting the Federal Service Labor-Management Relations Act (FSLMRA), 5 U.S.C. §§ 7101-7135 (Supp. III 1979)), contended that bargaining over the implementation of that decision was mandatory. The charge was submitted to the Unfair Labor Practices Panel as prescribed by the Code § 2.13(1). The Panel rejected the Authority's contention that because the surveillance was conducted pursuant to a criminal investigation bargaining over implementation was not required, and found the Authority in violation of the Code. The Authority told the union that it planned to file a petition for relief from the Panel's decision in the Virginia courts pursuant to § 2.13(4) of the Code, but before it could do so, the union filed suit in the District Court for the District of Columbia seeking to enforce the Panel's decision. The next day the Authority brought its petition for review in the Virginia Circuit Court.[1] The union then amended its complaint in district court to include a claim that the refusal to bargain over the impact and implementation of the surveillance constituted a violation of the lease.
 
 
 5
 The district court dismissed the union's complaint, but the basis for its decision is unclear. The court obliquely explained that because the dispute was over the Panel's findings and not over the fairness of the procedures by which the Panel reached its conclusions, the Code's scheme for review in the Virginia courts applied in this case. However, the court also suggested-even if it did not explicitly say--that it had jurisdiction and was merely abstaining in favor of the ongoing state court proceeding.
 
 II.
 
 6
 Both parties agree at least in theory that under the Authority's statutory and regulatory regime, jurisdiction is granted to the federal courts for certain issues and to the Virginia courts for others. The parties disagree, however, on which jurisdictional category is implicated in this case. The union submits that the Act requires the Authority to "continue all collective bargaining rights enjoyed" (emphasis added) by its employees before the lease took effect and contends that had this dispute arisen while the firefighters were still federal employees, the Authority would have been required under our American Federation of Government Employees case to bargain over the impact and implementation of the surveillance. The union reasons, therefore, that the jurisdictional provision in the Act entitles it to have its claim heard in the federal courts--and that the federal courts should apply the FSLMRA to the dispute.
 
 
 7
 The union relies on Metropolitan Washington Airports Authority Professional Fire Fighters Association Local 3217 v. United States, 959 F.2d 297, 307 (D.C.Cir.1992), in which--while noting that "the question whether jurisdiction over unfair labor practice matters properly lies in Virginia courts [was] not yet ripe for decision" in that case--we recognized the difficulty of the question and commented that "it is unclear whether there are any circumstances under which this clause [giving jurisdiction to Virginia courts] would have any effect." Accordingly, the union argues that the district court improperly abstained from exercising federal jurisdiction. The Authority counters that, pursuant to the Code, jurisdiction to review the Panel's decisions lies in the Virginia courts, and the district court properly dismissed the claim for lack of jurisdiction. In any event, the Authority argues that res judicata bars the federal action. The Authority adds that even assuming that the district court could assert jurisdiction over this claim, it properly abstained.
 
 
 8
 It is important to emphasize that the union does not challenge the validity of the Code, nor does it claim that the provision of the Code granting jurisdiction to Virginia courts to review the Panel's disposition of unfair labor practice claims is unlawful. Rather, the union argues that it can elect to go to federal court, and gain the benefit of federal government labor relations law, simply by alleging that the unfair labor practice complained of--the refusal to bargain over video surveillance--is itself a violation of the lease. The union implies that its interest in vindicating the federally protected collective bargaining rights which existed at the time the lease took effect would be undermined if the Virginia courts alone were allowed to review the Panel's adjudications of unfair labor practice claims. The union alternatively argues that even if the Virginia court has "initial" jurisdiction to review the Panel's decisions, the union should have two bites at the apple--it should be able first to petition a Virginia court for review under the Code, and, if it loses, it should then have recourse to federal court to argue that the same unfair labor practice would violate the FSLMRA and therefore that the lease is violated.
 
 
 9
 Unfortunately, neither the parties nor the district court came to grips with the nub of the underlying issue here: how to delineate the boundaries of the two jurisdictional provisions. Although the interrelationship between federal and Virginia jurisdiction and substantive law under the Act is certainly peculiar, and more than a little puzzling, we think the key to determining the proper boundary between these provisions is to examine the structure and purpose of the Act.
 
 
 10
 Congress' stated purpose in transferring control over the airports to the Authority was to "achieve local control, management, operation, and development" of the airports. 49 U.S.C.A. § 49102(a). But the Act does not simply turn the airports over to Virginia or the District of Columbia, rather it establishes a regime under which the Authority balances the "continuing but limited [federal] interest" in the airports, id. at § 49101(3), with the "growing local interest," id. at § 49101(7). This balance is reflected in the Authority's jurisdictional provisions.
 
 
 11
 Prior to the creation of the Authority, airport employees were federal employees whose collective bargaining rights were adjudicated under federal law. See Metropolitan Washington Airports Authority Professional Fire Fighters Assoc., 959 F.2d at 298. The statutory guarantee of the airport employees' continuing "collective bargaining rights" certainly imposes some federal limitation on the formulation, and perhaps the implementation, of the Code. But in creating the Airports Authority, Congress expressly transferred the management and operation of the airports--including employment matters--from the federal to the state/local level. 49 U.S.C.A. §§ 49101(7); 49102(a). Congress provided that the continuing federal interest would be vindicated through "a lease mechanism which provides for local control and operation." Id. at § 49101(10). We can generally assume that the Authority's obligation to continue the employees' collective bargaining rights is discharged through the Code and its implementation.
 
 
 12
 We think the federal/local balance implicit in the Act is best honored by allocating to Virginia courts jurisdiction to review challenges to the application of the Code and to federal district courts jurisdiction over facial challenges to the Code (as violations of the lease). Here, because the union brings an unfair labor practice claim, which involves an interpretation of the Code, it is an as-applied challenge and jurisdiction lies in the Virginia courts, not in federal court. If the union had argued that the Code on its face violated the lease in some manner, then the federal district court would have had jurisdiction.
 
 
 13
 Perhaps a case might arise where a decision of the Virginia courts is claimed to so undermine the framework of collective bargaining as to be, in effect, a betrayal of the Code; the union might argue that to challenge that decision is to raise a de facto facial challenge to the Code as a violation of the lease, allowing for federal court jurisdiction. We rather doubt whether that argument would succeed, since it might be thought equivalent to asking an inferior federal court to review the judgment of a state court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)) (holding that 28 U.S.C. § 1257 grants appellate jurisdiction over judicial decisions of state courts only to the United States Supreme Court and not to inferior federal courts).[2] In any event, the union makes no such assertion here. It simply seeks the benefit of the same decision on a rather controversial question of labor relations law as it would have received had the Authority never been created and had the union's members remained federal employees. That it cannot gain simply by arguing that the Authority violated the lease. For the foregoing reasons, the district court's dismissal of the union's claim is affirmed.
 
 
 14
 So ordered.
 
 
 15
 Karen LeCraft Henderson, Circuit Judge, concurring:
 
 
 16
 The holding in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, ---- - ----, 118 S.Ct. 1003, 1012-16, 140 L.Ed.2d 210 (1998), compels me to concur on the jurisdictional ground set forth in the majority opinion. I note, however, that the Union's sole surviving claim is plainly res judicata.
 
 
 
 [1]
 The Virginia Circuit Court subsequently granted summary judgment for the Authority, reversing the Panel's decision. Metropolitan Washington Airports Authority v. Metropolitan Washington Airports Authority Professional Firefighters Association Local 3217, Chancery No. 97-0712 (Va. Cir. Apr. 2, 1998)
 
 
 [2]
 There would be no claim preclusion in such a situation, because in the unique statutory scheme here, the federal claim of a violation of the lease would not be analytically the same legal issue as a claim of a misapplication of the Code and so could not be raised in the Virginia courts. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ("A federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered."). Under Virginia law, a final judgment on the merits in a prior action is conclusive only as to questions actually decided as well as to matters the parties might have litigated. Kemp v. Miller, 166 Va. 661, 186 S.E. 99, 103-04 (1936) (citations omitted) (cited in Guerrero v. Katzen, 774 F.2d 506, 508 (D.C.Cir.1985))
 We note, however, that relitigation of the underlying facts may be barred under the doctrine of issue preclusion. See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 382, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (citing Kremer v. Chemical Const. Corp., 456 U.S. 461, 467, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)) (observing that a federal court applies state rules of issue preclusion to determine whether a matter actually litigated in state court may be relitigated in a subsequent federal proceeding).