DISTRICT OF COLUMBIA, Appellant,

v.

Shirley COLEMAN, Personal Representative of the Estate of Michael Ramseur, Appellee.

No. 93–CV–753.

District of Columbia Court of Appeals.

Argued March 7, 1995.

Decided Oct. 26, 1995.

Donna M. Murasky, Assistant Corporation Counsel, with whom Vanessa Ruiz, Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Blair G. Brown, with whom Gregory H. Gust, Washington, DC, was on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and KING, Associate Judges.

STEADMAN, Associate Judge:

This case arises from an incident in which an on-duty District of Columbia police detective, passing through Maryland on his way between two points in the District of Columbia, intervened to stop an apparent assault and in the process shot and killed one of the two men involved in the attack on a third man. Both the police detective and the decedent were Maryland residents. After a two-week jury trial, a jury found in favor of the decedent's estate and against the District on *respondeat superior* liability for the police detective's negligence, and awarded $610,000 to the estate.[1] We agree with the District that Maryland law should have controlled the question whether the affirmative defenses of contributory negligence and assumption of risk were available on the negligence count. Accordingly, we reverse and remand for a new trial.

## I.

On the evening of September 20, 1988, Detective David Pigford, a member of the District of Columbia Metropolitan Police Department ("MPD"), was serving subpoenas in the southeast area of the District until approximately 9:30 p.m. Pigford was driving an unmarked police vehicle and was wearing a suit, his usual work attire. On his way back to the MPD, Detective Pigford stopped to buy dinner at a carry-out on Kenilworth Avenue, near the intersection of Eastern Avenue; Pigford then headed north on Kenilworth Avenue and entered Prince George's County, Maryland. As he was driving on Kenilworth Avenue, Pigford saw three men run into the street. Two men, later identified as Michael Ramseur and Bobby Davenport, were chasing and striking a third man, later identified as Dana Harris; Davenport

---

1. By consent of the parties the judgment was reduced to $606,343.05. The difference is accounted for in the reduction of the amount awarded for funeral and medical expenses from $10,000 to $6343.

was armed with a club, which he used to strike Harris, and Ramseur appeared to be striking Harris either with his fist or with a light-colored object. Harris ran up to several cars ahead of Pigford's car and yelled, "Help, help, they're gonna kill me, help," but the cars pulled away and Ramseur and Davenport continued to strike Harris.

Harris then ran to the driver's side of Pigford's car, continuing to yell for help. Pigford stopped his vehicle and attempted to get out of his door three times, but each time he was prevented by Davenport swinging the club at him. Davenport and Ramseur continued attacking Harris, and Harris continued to cry for help. Pigford then successfully kicked his door open and pulled out his gun; Pigford later testified that

> Things were happening fast. When the door opened, they made moves toward me. The guy that had the stick; had it raised about to strike; the guy that had this thing in his hand, he had squared himself in a position like to either swing or throw whatever it was at me; and this happened simultaneously, irrespective of my telling them to halt ... I was in fear of my life.

Pigford fired his gun, first at Ramseur and then at Davenport; the first bullet struck Ramseur, who fell to the ground, and the second missed Davenport, who fled from the scene. Pigford radioed for an ambulance, which arrived soon after; Ramseur was pro-nounced dead at the emergency room of Prince George's County Hospital.

Ramseur's mother, Shirley Coleman[2], brought suit on behalf of his estate against the District on a *respondeat superior* theory, alleging that Pigford had committed assault and battery and had acted negligently in shooting Ramseur.[3] The trial took place in December 1992 and lasted for two weeks; the jury found that Pigford had not committed assault and battery, but that he had acted negligently in shooting Ramseur.[4]

## II.

The trial court refused the request of the District for an instruction on the affirmative defenses of contributory negligence and assumption of risk.[5] In *District of Columbia v. Peters*, 527 A.2d 1269, 1274 (D.C.1987), the court ruled that those defenses could not be raised to bar recovery in that action based on a police officer's negligence in failing to follow certain statutes and regulations prohibiting excessive force.[6] Appellee contends that the District, in the trial court, conceded that if District law applies, under *Peters* it would not be entitled to a contributory negligence or assumption of risk instruction. In this court the District does not challenge that assertion; therefore, we will assume, without deciding, that under those circumstances

2. Coleman is a resident of North Carolina.

3. Coleman's original complaint included Pigford as a defendant, but she dismissed the counts against Pigford at the beginning of the trial.

4. Appellee asserted Pigford was negligent in several respects, such as shooting unnecessarily since he was at some distance from the assault and Ramseur was unarmed and presented no danger to him or to Harris. Appellee also asserted that Pigford did not identify himself or resort to lesser force or alternatives. Contrary to the District's argument, we think that the evidence of negligence was sufficient to go to the jury under the instructions of the trial court. Given our ruling with respect to the instructional error and the remand for a retrial, we need not address the District's other arguments on appeal, nor whether the evidence would have been sufficient under a different set of instructions.

The District also asserts that the jury verdict was inconsistent, an argument clearly belied by our caselaw. *See District of Columbia v. Evans,* 644 A.2d 1008 (D.C.1994) and cases cited. *Maddox v. Bano,* 422 A.2d 763 (D.C.1980) is not to the contrary; the plaintiff in *Maddox* was barred from claiming that police had committed negligence as well as assault and battery, but only because the plaintiff's complaint specified no negligent acts. 422 A.2d at 764.

5. As we understand the record below, this was the only choice of law challenge raised by the District at trial.

6. Given the District's position on appeal, we have no occasion to examine whether the *Peters* principle may be inapplicable to certain forms of plaintiff conduct. *See Martin v. George Hyman Const. Co.,* 395 A.2d 63, 71 (D.C.1978) (unavailability of contributory negligence does not mean that plaintiff's conduct is irrelevant under all circumstances; for example, conduct exceeding ordinary contributory negligence such as wilful, wanton, or reckless negligence will bar recovery).

those instructions should not be given if District law were to apply.[7]

The question before us, then, is whether the trial court erred when it denied the District's request to apply Maryland law on the issue of contributory negligence and assumption of risk. This inquiry requires two steps. First, we examine whether Maryland or District law applies to this particular issue. Second, if we conclude that Maryland law applies, we examine what that law is, in order to determine whether the outcome would be the same in any event.[8]

### A.

We review questions of choice of law on a *de novo* basis. *Atkins v. Industrial Telecommunications Association,* 660 A.2d 885, 888 (D.C.1995). In determining which jurisdiction's law to apply in a tort case, we use the "governmental interests" analysis, under which we evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review. *Hercules & Co. v. Shama Restaurant,* 566 A.2d 31, 40–41 (D.C.1989). As part of this analysis, we also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145:

a) the place where the injury occurred;

b) the place where the conduct causing the injury occurred;

c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

d) the place where the relationship is centered.

*Id.* (citing *Estrada v. Potomac Elec. Power Co.,* 488 A.2d 1359, 1361 n. 2 (D.C.1985)).

Using the governmental interests test, we first look at each jurisdiction's policy to see what interests the policy is meant to protect, and then consider which jurisdiction's policy would be most advanced by applying the law of that jurisdiction. Part of the test of determining the jurisdiction whose policy would be most advanced is determining which jurisdiction has the most significant relationship to the dispute. *Hercules, supra,* 566 A.2d at 41 n. 18 (the governmental interests test and the most significant relationship test have sometimes been treated as separate approaches to choice of law questions, but we have applied a constructive blending of the two approaches). "When the policy of one [jurisdiction] would be advanced by application of its law, and [the policy of the other jurisdiction] would not be advanced by application of its law, a false conflict appears and the law of the interested [jurisdiction] prevails." *Kaiser–Georgetown Community v. Stutsman,* 491 A.2d 502, 509 (D.C. 1985) (quoting *Biscoe v. Arlington County,* 238 U.S.App.D.C. 206, 214, 738 F.2d 1352, 1360 (1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985)). When both jurisdictions have an interest in applying their own laws to the facts of the case, "the forum law will be applied unless the foreign [jurisdiction] has a greater interest in the controversy." 491 A.2d at 509. We are not bound to decide all issues under the law of a single jurisdiction; choice of law involves examination of the various jurisdictional interests as applied to the various distinct issues to be adjudicated. *Hercules, supra,* 566 A.2d at 40.

---

**7.** It is not immediately apparent why the District of Columbia must bear responsibility for the event in Maryland where Pigford had in fact no police powers, nor why Maryland law does not apply to all aspects of the litigation rather than to the issue of contributory negligence and assumption of risk alone. However, the District does not protest otherwise, and therefore, in accordance with standard appellate practice, we take the appeal as it comes to us. *See, e.g., Ford v. United States,* 533 A.2d 617, 624 (D.C.1987) (en banc) ("appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them," quot-

ing *Carducci v. Regan,* 230 U.S.App.D.C. 80, 86, 714 F.2d 171, 177 (1983)).

**8.** Of course, this inquiry could be made in the reverse order, but that is of no moment here since we rule for the District on both prongs of the inquiry. Appellee does not here challenge the sufficiency of the evidence to justify a contributory negligence and assumption of risk instruction if those defenses are applicable. *See Jones v. United States,* 555 A.2d 1024 (D.C.1989) (party entitled to instruction on its theory of the case if there is any evidence to support it in the record).

As already mentioned, appellee here invoked the holding in *Peters, supra,* 527 A.2d at 1274, that affirmed a trial court's refusal to instruct on the defenses of contributory negligence and assumption of risk in a suit alleging that a police officer violated a District statute and police regulation concerning the use of force. *Peters, supra,* 527 A.2d at 1274. The court reasoned that the public policy behind these provisions was "to promote the safety of citizens by deterring police use of excessive force" and that this policy would be undermined by allowing such defenses.[9] *Id.; see also Etheredge v. District of Columbia,* 635 A.2d 908, 916 (D.C. 1993) (the public policy behind statute imposing criminal liability for excessive force is "to promote the safety of citizens by deterring police use of excessive force"); *District of Columbia v. White,* 442 A.2d 159, 164 (D.C. 1982) ("sanctions penalizing police use of excessive force promote the safety of city residents by deterrence"). The major focus of the policy, then, is on public safety within the District itself, where the obligations and concerns of the District are paramount and where the police have the special authority to resort to use of force granted to law enforcement officers. *See Etheredge, supra,* 635 A.2d at 916.

Conversely, however, the District of Columbia can have no compelling interest in ensuring that a District of Columbia officer (or the District itself) who is found to have committed acts in Maryland which would be negligent violations of District regulations must pay damages to a Maryland resident when a similarly situated Maryland citizen who was not a District officer (or Maryland itself) would be entitled to assert the affirmative defenses of contributory negligence and assumption of risk, and therefore might be absolved from liability altogether. *See Estrada, supra,* 488 A.2d at 1365, citing *Williams v. Williams,* 390 A.2d 4, 6 (D.C. 1978) (refusing to apply ameliorating provisions of District law for the benefit of a Maryland plaintiff, the result of which would affect Maryland land, and Maryland policy being to the contrary).[10] Compare *Mims v. Mims,* 635 A.2d 320, 323 (D.C.1993), which makes an analogous analysis:

> the primary purpose of the District's child support legislation is to protect the rights of District of Columbia children, not to penalize District of Columbia fathers.... Indeed, the District of Columbia has no legitimate interest in ensuring that a father who lives in the District must pay more to support Maryland children than an otherwise similarly situated Maryland resident would be required to pay.

Turning to the policy concerns of Maryland, the other jurisdiction involved, they are a mirror image of the District's concerns with respect to the District. Maryland has the primary obligations and duties

---

9. The court applied the analysis set forth in the seminal case of *Martin, supra.* That case noted that while either contributory negligence or assumption of risk was, in general, a complete bar to recovery, such defense might not be available where liability was founded upon a breach of duty imposed by a statute or regulation "if the purpose of the [enactment] would be defeated by application of either defense." 395 A.2d at 68. However, a close analysis is required. "The defenses of contributory negligence and assumption of risk may not conflict with the benefit intended by the statute or regulation. Moreover, the conflict between an intended statutory benefit and one of the defenses does not ipso facto bar the other defense. The effect of a statute or regulation depends upon analysis not only of the policies of the enactment but also the relation of those policies to each of the defenses individually." *Id.* at 69; *see also* note 6, *supra.*

10. *Zhou v. Jennifer Mall Restaurant,* 534 A.2d 1268 (D.C.1987) does not require that we apply District law. In that case, we held that District law applies "when a cause of action is cognizable under District of Columbia tort law *on the basis of a violation within the District of Columbia* of a District of Columbia statute or regulation, even though the injury occurs nearby in Maryland where a similar statute has been interpreted by Maryland's highest court as not supporting civil liability." *Id.* at 1271. The key distinction between this case and *Zhou* is that in *Zhou,* the negligent violation of the District statute (serving alcohol to an intoxicated person) occurred within the District. Furthermore, the plaintiffs in *Zhou* were District residents. In this case, the decedent is a Maryland resident, the allegedly negligent violation of a statute occurred in Maryland, and the relationship of the parties was centered in Maryland. Also, unlike *Zhou,* Maryland does allow civil liability for the type of negligence alleged here; the difference between Maryland and District law is whether the negligent actor may plead affirmative defenses.

with respect to public safety in Maryland and the right to determine the circumstances under which liability shall attach for acts relating to public safety undertaken within its borders, particularly where both actors are its own residents. This primary interest is true not only with respect to acts by its duly constituted law enforcement officers but also by other third parties, whether officials from other jurisdictions or simply good samaritans, who go to the aid of those in apparent public danger.

■■■■■ An application of the four factors set forth above from the Restatement leads to a similar conclusion. The great majority of these factors weigh in favor of the application of Maryland law. The injury to Ramseur occurred in Maryland; the conduct causing the injury occurred in Maryland; both Ramseur and Pigford were residents of Maryland; and the relationship was centered in Maryland (indeed, Ramseur and Pigford had no relationship whatsoever outside of Maryland). Only two factors link the occurrence to the District. First, the District is a defendant. This cannot be of any controlling significance, since the District's liability is based solely on *respondeat superior* and unless Pigford is liable in his own right, the District cannot be liable. Second, according to the stipulation of the District at trial, "Pigford was on duty [11] as a detective with the Metropolitan Police Department and at the time of the shooting of Michael Ramseur was acting as an officer of the Metropolitan Police Department." Whatever this stipulation was meant to encompass [12], we do not think that employment status alone, when weighted against all the other factors that point to Maryland, can control the choice of law here.

We appreciate that in the appeal as framed, we are dealing with the more narrow issue of whether Maryland law should apply only in determining whether the affirmative defenses of contributory negligence and assumption of risk should be allowed in circumstances such as presented here. An examination of the Maryland law with respect to that issue reveals, however, further policy determinations and considerations which fortify the foregoing analysis as applied to that particular issue. We turn to that inquiry.

**B.**

■■■■ We start our analysis with the undisputed proposition that Maryland has adopted no doctrine akin to *Peters*, which barred a police officer who negligently violated a statute and regulation from claiming the affirmative defenses of contributory negligence and assumption of risk. We therefore look to the general rules of that state as to the availability of those defenses and the circumstances where a defendant is barred from invoking them.

■■■■■ Maryland, like the District, follows the common law rule that contributory negligence and assumption of risk are generally available as affirmative defenses in negligence litigation. *See, e.g., Schroyer v. McNeal*, 323 Md. 275, 592 A.2d 1119 (1991). "The absence or presence of contributory negligence is generally a question for the jury. . . . It is only where the minds of reasonable persons cannot differ that the court is justified in deciding the question as a matter of law." *Moodie v. Santoni*, 292 Md. 582, 441 A.2d 323, 326–27 (1982); *see also Schear v. Motel Management Corp.*, 61 Md. App. 670, 487 A.2d 1240, 1246 (1985) (determination of the application of either contribu-

11. Members of the police force are "held to be always on duty", and are required to take police action when crimes are committed in their presence. *See* 6A DCMR § 200.4 (1988); D.C.Code § 4–142 (1988); *Bauldock v. Davco Food, Inc.*, 622 A.2d 28, 34 (D.C.1993). However, while Pigford was *actually* on duty (as opposed to merely being "held to be" on duty in his spare time), he was unlike the officer in *Bauldock* in that he was in Maryland and therefore had no police powers at the time of the incident. See text at n. 14 *infra*. *Cf. Sawyer v. Humphries*, 322 Md. 247, 587 A.2d 467, 472–73 (1991) (officer

may engage in conduct while "on duty" that is outside scope of employment).

12. It is at best ambiguous whether it was meant to concede that in the actual shooting itself, Pigford was acting as an officer of the MPD—he had no authority to do so in Maryland, see discussion *infra*—or whether he was at that time in such employment as he moved from one point of the District to another through Maryland, a concession possibly sufficient to underpin the *respondeat superior* theory of District liability.

tory negligence or assumption of risk is a matter to be resolved by the jury). Maryland's doctrine of contributory negligence focuses on the plaintiff and whether he has "neglect[ed] ... the duty imposed upon all ... to observe ordinary care for their own safety." *Casper v. Chas. F. Smith & Son,* 71 Md.App. 445, 526 A.2d 87, 99 (1987), *aff'd,* 316 Md. 573, 560 A.2d 1130 (1989). With respect to assumption of risk, Maryland has articulated the rationale underlying that doctrine as follows:

> The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found ... by implication from the conduct of the parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility.

*Schroyer, supra,* 592 A.2d at 1122; *see also McQuiggan v. Boy Scouts of America,* 73 Md.App. 705, 536 A.2d 137, 139 (1988) ("Assumption of the risk negates the issue of a defendant's negligence by virtue of a plaintiff's previous abandonment of his or her right to maintain an action if an accident occurs"). Under Maryland law, "the rationale for the result differs" for a finding of contributory negligence and a finding of assumption of risk, but the rationale for each appears to focus on the plaintiff's actions:

> Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.

*Casper, supra,* 526 A.2d at 100. Here, the decedent, in whose right the action is brought, was a Maryland resident whose claim arose out of an injury sustained in Maryland, and therefore Maryland has an interest in applying its rule which bars recovery to plaintiffs who proximately cause their injuries through their own negligence, and to plaintiffs who have previously assumed the risk of being injured.

There is an exception, recognized by many jurisdictions, to the rule allowing the affirmative defenses of contributory negligence and assumption of risk: that these defenses do not bar recovery for a breach of duty imposed by a statute (or ordinance or regulation), if the purpose of the statute would be defeated by application of these defenses. *See* Restatement (Second) of Torts §§ 483, 496F (1965); *Martin, supra,* 395 A.2d at 68 (this rule does not apply automatically, but only when the defenses conflict with the benefit intended by the statute). As already indicated, this exception underlies our decision in *Peters, supra.* However, in its most recent decision on the point, Maryland's highest court indicated that it took a more limited view of this exception. The court held that the trial court was correct to submit the defenses of assumption of risk and contributory negligence to the jury, even though the defendant had violated statutes that were aimed at promoting workplace safety. *Brady v. Ralph M. Parsons Co.,* 327 Md. 275, 609 A.2d 297 (1992). The court distinguished §§ 483 and 496F of the Restatement (Second) of Torts (1965), focusing on the concept that the affirmative defenses bar recovery unless the effect of a statute is to place the entire responsibility for harm that occurs upon the defendant, in order to protect a class of plaintiffs against their own inability to protect themselves; the court held that the occupational safety and health statutes in question were not intended to relieve workers of a duty to exercise reasonable care for their safety, and therefore the statutes did not place the entire responsibility for harm on the defendant-employer. *Id.*

It is not clear whether the Maryland court meant that these defenses must always be available in cases where a defendant is charged with negligently violating public safety statutes; however, it is certain that the Maryland court took a somewhat broader view of the availability of the affirmative defenses than we did in a similar workplace safety case, *Martin, supra,* 395 A.2d at 71–74. In *Martin,* we held that contributory negligence was not available as a defense to an employer who had violated a duty to provide reasonably safe working conditions

for wage earners, and that assumption of risk was available only under certain rather stringent circumstances.[13] The *Brady* court specifically declined to follow *Martin*'s rule. *Brady, supra,* 609 A.2d at 306. The contrast between *Brady* and *Martin* indicates to us that Maryland's requirements for asserting the affirmative defenses of contributory negligence and assumption of the risk appear to be less restrictive than the District when statutory violations are at issue.

■■■■ However, we do not need to definitively resolve whether Maryland law would allow affirmative defenses to a police officer who has violated excessive force statutes, since we believe that Maryland law would in the circumstances treat Pigford as a private citizen rather than a police officer in determining whether the affirmative defenses were available without regard to the District's statutes or regulations.[14] In *Stevenson v. State,* 287 Md. 504, 413 A.2d 1340 (1980), three District of Columbia police detectives were in Maryland on other business when they observed two men running from what appeared to be a bank robbery. The detectives seized and arrested the two men after announcing themselves as police officers and brandishing weapons. The issue was whether the detectives had acted as police officers or as private parties. The Maryland court was categoric: since the detectives were in Maryland not in "hot pursuit" but on other business, "they no longer had authority to arrest as police officers. Consequently, their acts must be examined as those of private citizens. . . . [U]nder the

circumstances present here, the District of Columbia police officers were functioning in a private rather than official capacity for the purpose of evaluating the legality of the arrests here." *Stevenson, supra,* 413 A.2d at 1344.[15]

We see no reason why a Maryland court would not take the same approach here and consider that Pigford was acting as a private citizen in his attempted rescue of Harris and in his defense of himself, and allow him to invoke the affirmative defenses at issue here. The statutes and regulations of the District of Columbia cannot have such extraterritorial effect as to bar the application by Maryland of its law governing such limitations on the liability of private citizens.

■■■ Appellee argues that Md.Code § 5–309.2, "Law enforcement officer acting outside jurisdiction," demonstrates that Maryland has a policy of holding foreign police officers liable to the extent that they would be liable in their home jurisdictions. That provision reads:

(a) *When not civilly liable.*—A law-enforcement officer acting outside the officer's jurisdiction but in the State, is not civilly liable, except to the extent that he would be if acting in his own jurisdiction, for any act or omission in preventing or attempting to prevent a crime, or in effectuating an arrest, in order to protect life or property if:

(1) The action is not grossly negligent;

---

13. Specifically, we held that the defendant must prove that the wage earner had available an alternative to encountering the risk, that the choice between the risk and the alternative was fully voluntary, that the alternative met the mandated safety requirements, and that the wage earner's determination to encounter the risk was made with wilful, wanton, or reckless disregard for the wage earner's own safety. 395 A.2d at 74.

14. Appellee argues that the District is bound by its stipulation at trial that Pigford was on duty and was acting as a police officer at the time he shot Ramseur. However, "we are not bound by stipulations on questions of law in general . . . or as to choice of law in particular." *Mims, supra,* 635 A.2d at 322. "[I]f the stipulation is to be treated as an agreement concerning the legal

effect of admitted facts, it is obviously inoperative, since the Court cannot be controlled by agreement of counsel on a subsidiary question of law." *Id.* at 323, n. 5 (quoting *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289, 37 S.Ct. 287, 289–90, 61 L.Ed. 722 (1917)). In any event, the stipulation is not entirely clear, *see supra* note 12, and we are considering Pigford's non-police status in Maryland only insofar as it relates to the affirmative defenses.

15. That the detectives carried weapons and yet were held to be private citizens precludes any successful reliance by plaintiff in its choice-of-law argument on the asserted fact that the legality of possession by Pigford of his weapon depended upon his status as a law enforcement officer.

and

(2) The action is taken at the scene of the crime or attempted crime.

(b) *Defense by employer.*—A law-enforcement officer sued for acting under subsection (a) of this section shall be defended in any civil action by the law-enforcement officer's employer as if the incident had occurred in the officer's jurisdiction.

(c) *Benefits.*—A law-enforcement officer who is injured in taking action under subsection (a) of this section is entitled to workmen's compensation, disability, death benefits, life insurance and all other benefits to the same extent as if the injury had been sustained in the officer's jurisdiction.

We agree with the District that this statute appears only applicable to Maryland police officers acting within Maryland, but outside their Maryland jurisdictions. Subsection (b) of this statute requires that the employers of police officers from other jurisdictions defend the officers in civil actions as they would if any similar incident had occurred in their home jurisdiction, and subsection (c) requires that officers will be entitled to the same benefits they would have received if an injury had been sustained in their home jurisdiction; such policies can only be meant to apply to Maryland police officers, since Maryland cannot regulate benefits provided and employers' choices to defend their employees if those employers are residents of other states.

Furthermore, this statute is clearly intended to protect law enforcement officers, not to expand their liability. It focuses upon the actions of the officer, while the affirmative defenses at issue here are addressed to the actions of the plaintiff. And indeed, whether the officer's "own jurisdiction" would impose civil liability is the very question at issue here. We do not think that this statute alone would cause a Maryland court to deny a foreign law enforcement officer the right to plead contributory negligence or assumption of risk.

■ We are strengthened in this belief by a further consideration of Maryland law different from that of the District. Maryland has a demonstrated interest in encouraging "good samaritans" to rescue victims without fear of liability, as is shown by Maryland Code Ann., Art. 27, § 12A. This statute provides that

> Any person witnessing a violent assault upon the person of another may lawfully aid the person being assaulted by assisting in that person's defense. The force exerted upon the attacker or attackers by the person witnessing the assault may be that degree of force which the assaulted person is allowed to assert in defending himself.

The District referred to this statute [16] when arguing to the trial court that Maryland law should apply to the extent of allowing instructions on the affirmative defenses to negligence. *See Alexander v. State,* 52 Md.App. 171, 447 A.2d 880 (this statute was enacted when "the Legislature, motivated by increasing violence in society and the reluctance of citizens to 'get involved', sought to afford protection to a defender who acts while injury may still be prevented"), *aff'd,* 294 Md. 600, 451 A.2d 664 (1982); *Lambert v. State,* 70 Md.App. 83, 519 A.2d 1340, 1345, *cert. denied,* 309 Md. 605, 525 A.2d 1075 (1987). Indeed, in *Stevenson* itself, upholding an expansive view of citizen arrests, the court made special mention of the important role of private citizens in public safety. "Placing greater obstacles in the path of citizens who wish to aid society [in this manner] may, in the end, prove to be detrimental to the maintenance of peace and good order in the community." 413 A.2d at 1349.

■ Given this policy of encouraging private citizens to participate in public safety and specifically in cases of assault, and given Maryland's general law on assumption of risk and contributory negligence, we conclude that Maryland law allows Pigford to assert the affirmative defenses, and therefore allows the District to assert these defenses when the District is a party through *respon-*

---

**16.** We are not cited to any District counterpart of    this Maryland statute.

**822**

*deat superior.*[17]

*Reversed and remanded for new trial.*

---

**17.** We do not address the District's assertions in its brief as to what specific instructions may be required in connection with the application of Maryland law, nor its argument, relying in part on our decision subsequent to the trial herein, *Etheredge, supra,* 635 A.2d at 916 n. 10, that the trial court's instruction on reasonable force was inadequate. Likewise, given our remand for a new trial, we do not address the District's arguments addressed to asserted flaws in the expert testimony on the quantum of damages. *See WMATA v. Davis,* 606 A.2d 165, 177–78 (D.C. 1992). All these matters remain open for consideration.