Rachelle BARIMANY,
et al., Appellants

v.

URBAN PACE LLC, Appellee.

No. 12–CV–982.

District of Columbia Court of Appeals.

Argued March 20, 2013.
Decided Aug. 1, 2013.

Leslie McAdoo Gordon, for appellants.

Christopher B. Mead, with whom Mark London, Washington, DC, Bradley Clements, and Lance Robinson, Washington, DC, were on the brief, for appellee.

Before BECKWITH and EASTERLY, Associate Judges, and REID, Senior Judge.

EASTERLY, Associate Judge:

Appellants Rachelle Barimany and Erik Dove appeal the trial court's dismissal of their tort action against Appellee Urban Pace LLC ("Urban Pace") for wrongful involvement in litigation. They argue that the trial court improperly applied Virginia law instead of District of Columbia law; alternatively, they argue that, even if Virginia law (specifically the Virginia Condominium Act, Va.Code Ann. §§ 55–79.39 to –79.103 (2010)) applied, it did not immunize Urban Pace from liability. We need not determine whether the trial court properly looked to Virginia law to deter-

mine if Ms. Barimany and Mr. Dove had a claim for wrongful involvement in litigation, in light of our determination that (1) the Virginia Condominium Act does not conflict with District of Columbia law, and thus was properly applied by the trial court, and (2) that statute shielded Urban Pace from liability. Accordingly, we affirm.

## I. Facts and Procedural History

In January 2007, Ms. Barimany and Mr. Dove entered into a purchase agreement with Abdo Clarendon LLC ("Abdo"), a condominium developer, for a condominium unit and parking spaces located in Virginia. Ms. Barimany and Mr. Dove were already Virginia residents. Urban Pace, a District of Columbia LLC, acted as Abdo's sales agent for this transaction.

Although the condominium unit was sold in accordance with an initial Public Offering Statement ("POS"), Abdo amended the Public Offering Statement pertaining to the condominium unit in March 2007 ("Amended POS"). Ms. Barimany and Mr. Dove allege that they never received a copy of the Amended POS. An Urban Pace employee sent Ms. Barimany and Mr. Dove a document with their signatures on it, acknowledging receipt of the Amended POS, but they assert that their signatures were forged by employees or agents of Urban Pace.

In October 2007, after receiving a copy of the Amended POS purportedly bearing their signatures, Ms. Barimany and Mr. Dove sought to rescind the purchase agreement. Abdo then filed suit in Virginia against, *inter alia*, Ms. Barimany and Mr. Dove, alleging breach of contract, defamation, and conspiracy to injure Abdo's reputation and business and seeking a declaratory judgment ("the Virginia litigation"). Ms. Barimany and Mr. Dove filed a counterclaim in the Virginia litigation, also requesting a declaratory judgment,

and alleging various statutory violations as well as breach of contract. After a three-day trial, the Virginia court found for Ms. Barimany and Mr. Dove on their counter-claim for breach of contract and ruled that they were entitled to a return of their deposit plus interest. The Virginia court specifically found that Ms. Barimany and Mr. Dove never received the Amended POS.[1]

Ms. Barimany and Mr. Dove subsequently brought their own suit in D.C. Superior Court against Urban Pace in which they contended that Urban Pace's alleged forgery of the amendment receipt had forced them to defend themselves and to seek counterclaims against Abdo in the Virginia litigation. Suing under the tort of wrongful involvement in litigation, they sought to recoup from Urban Pace, *inter alia*, the attorney's fees expended in that litigation with Abdo. Urban Pace filed its Motion in Limine to Determine that Virginia Law Governs this Action, which the trial court granted. Urban Pace then filed its Rule 12(c) Motion for Judgment on the Pleadings Because Controlling Virginia Law Requires Dismissal with Prejudice in which it argued that the tort of wrongful involvement in litigation is not recognized by Virginia courts and that, in any event, it was statutorily protected from liability by the Virginia Condominium Act. The trial court granted this motion as well. This appeal followed.

## II. Standard of Review

 We review "choice of law questions *de novo*." *In re Estate of Delaney*, 819 A.2d 968, 987 (D.C.2003). And we review a dismissal pursuant to Rule 12(c) under the same standard as dismissal pursuant to Super. Ct. Civ. R. 12(b)(6). *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 639 (D.C.2005) (en banc). " 'When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C.2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

## III. Analysis

Appellant's preliminary argument is that the trial court erred in choosing to apply Virginia law over District of Columbia law. This contention prompted a vigorous debate, reflected both in the parties' briefs and at oral argument, as to the correctness of the trial court's choice of law analysis; both parties examined whether the trial court properly employed the requisite "constructive blending" of the governmental interest analysis and the most significant relationship test to determine which jurisdiction's law to apply in this case.[2] But application of this analysis requires a conflict of law. As explained more fully below, we see no conflict that requires resolution by means of the constructive blending analysis.[3] First, because it could not affect the outcome of the case, there is no need to decide if there is a conflict between Virginia's and the District of Columbia's law regarding the availability of the tort of wrongful involvement in litigation. Second, we determine that the Virginia Condominium Act does not conflict

1. Because the trial court ruled pretrial that the Amended POS purportedly bearing Ms. Barimany's and Mr. Dove's signatures was not admissible, the court made no findings at trial about the alleged forgery.

2. *See, e.g., Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C.2002); *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995); *Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 41 n. 18 (D.C.1989).

3. Here we part ways with the concurrence, which determines that this analysis is necessary.

with any District of Columbia law and provides Urban Pace with a complete defense to this action.

■ We begin with first principles. Whether a conflict exists and, if so, what law applies, is a precise inquiry. Ms. Barimany and Mr. Dove assert that choice of law decisions are made "claim by claim." But choice of law analyses are properly conducted, as necessary, on an even finer basis and should be considered issue by issue—necessitating in this case the separate consideration of the legal claim and the defense thereto.[4] *See Coleman,* 667 A.2d at 816 ("We are not bound to decide all issues under the law of a single jurisdiction; choice of law involves examination of the various jurisdictional interests as applied to the various distinct issues to be adjudicated." (citing *Hercules,* 566 A.2d at 40)); *Stutsman v. Kaiser Found. Health Plan of the Mid–Atl. States, Inc.,* 546 A.2d 367, 373 (D.C.1988) (acknowledging the "process of applying the law of different states to determine different issues in the same case"); *Estrada v. Potomac Electric Power Co.,* 488 A.2d 1359, 1361 (D.C.1985) ("Choice of law involves examination not simply of various state interests generally, but of their interests regarding the various distinct issues to be adjudicated."); *Williams v. Rawlings Truck Line, Inc.,* 357 F.2d 581, 584 (D.C.Cir.1965)[5] (in the context of a negligence claim, noting that "[t]wo separate but closely related issues

are at once apparent, each requiring an independent evaluation of the respective interests of New York and of the District in the outcome of this case").[6]

■ A choice of law issue arises when the facts underlying a legal issue implicate multiple jurisdictions. Resolution of the issue depends on whether the jurisdictions' laws present no conflict, a false conflict, or a true conflict. A "no conflict" situation arises "when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented." *USA Waste of Md., Inc. v. Love,* 954 A.2d 1027, 1032 (D.C.2008). *See also In re Bernstein,* 707 A.2d 371, 375 n. 6 (D.C. 1998); *Williams,* 357 F.2d at 587. A "false conflict" situation arises " '[w]hen the policy of one jurisdiction would be advanced by application of its law, and the policy of the other jurisdiction would not be advanced by application of its law.' " *Coleman,* 667 A.2d at 816 (brackets omitted) (quoting *Kaiser–Georgetown Cmty. Health Plan, Inc. v. Stutsman,* 491 A.2d 502, 509 (D.C.1985)). "A true conflict arises when both states have an interest in applying their own laws to the facts of the case." *Herbert,* 808 A.2d at 779.

With respect to the first choice of law issue regarding the existence of the tort of wrongful involvement in litigation, we need not determine whether there is any type of conflict between Virginia and District of

---

4. Here again, we part ways with the concurrence, which concludes that "Virginia law governs this action." As we understand the analysis, the concurrence sees a conflict between the District of Columbia tort and the Virginia Condominium Act defense.

5. "With respect to decisions of the United States Court of Appeals rendered prior to February 1, 1971, we recognize that they, like the decisions of this court, constitute the case law of the District of Columbia." *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

6. At Urban Pace's invitation, the trial court's choice of law analysis was broad-brush. It initially granted the motion in limine filed by Urban Pace, requesting that Virginia law be applied to the entirety of the suit. Only later in its order granting Urban Pace's motion to dismiss under Rule 12(c) did the trial court examine the tort claim at issue and the defense raised by Urban Pace under the Virginia Condominium Act. But choice of law questions cannot be considered in a vacuum. To answer choice of law questions, trial courts should evaluate the precise interests implicated by the legal claims and defenses raised.

Columbia law. Answering this question is not necessary to the resolution of this case. Whether Virginia would recognize this tort and whether Virginia or District of Columbia law would apply are inconsequential. Even if Ms. Barimany and Mr. Dove had a cause of action under Virginia or District of Columbia law, as explained below, Urban Pace had a statutory defense that immunized it from liability.[7]

Turning to that statutory defense, we determine that there is no conflict between Virginia and the District of Columbia regarding the potential liability of a condominium developer's agent; the interests of Virginia and the District of Columbia are substantially the same. "Since there is 'no real conflict' in the interests of [Virginia] and the District, it is unnecessary for us to engage in the choice-of-law exercise that [the parties] press[ ] upon us.'" *Taylor v. Canady,* 536 A.2d 93, 96 (D.C.1988) (quoting *Kaiser–Georgetown,* 491 A.2d at 509).

■ Both Virginia and the District of Columbia have an interest in holding condominium developers liable for the tortious acts of their agents relating to the condominium projects within their respective borders. *Cf. Taylor,* 536 A.2d at 96 (finding that both states have an interest in compensating people injured in in-state car accidents). The Virginia Condominium Act applies "to all condominiums and to all horizontal property regimes or condomini-

um projects" located inside of the Commonwealth. Va.Code Ann. § 55–79.40(A)–(B) (2010). The Act specifically relieves condominium developers' agents of tort liability with respect to these condominium developments:

> An action for tort alleging a wrong done (i) by any agent or employee of the declarant[8] or of the unit owners' association, or (ii) in connection with the condition of any portion of the condominium which the declarant or the association has the responsibility to maintain, shall be brought against the declarant or the association, as the case may be.

Va.Code Ann. § 55–79.80:1(A) (2010). The District of Columbia Condominium Act applies "to all condominiums created in the District of Columbia after March 29, 1977." D.C.Code § 42–1901.01(a) (2001). And the District likewise relieves a declarant's agent of tort liability in its Condominium Act, using identical language to the Virginia statute. *See* D.C.Code § 42–1903.09(a) (2001). The similarity of the two acts is unsurprising, given that the District's Condominium Act "us[ed] the systematically drafted Virginia Condominium Act as a model." D.C. Council, Comm. on Housing and Urban Development, Amendment to Report on Bill 1–179, The Condominium Act of 1975 at 2 (Aug. 16, 1976). And because both Virginia and the District of Columbia bar declarant's agents from lia-

---

7. For the purposes of this appeal, we assume that, if the claim was available to them, Ms. Barimany and Mr. Dove have adequately pled the elements of their claim. Thus, we do not address Urban Pace's arguments in the alternative regarding whether they are a "third party" within the meaning of the tort.

8. Va.Code Ann. § 55–79.41 (2010) (" 'Declarant' means any person, or group of persons acting in concert, that (i) offers to dispose of his or its interest in a condominium unit not previously disposed of, including an institutional lender which may not have succeeded to or accepted any special declarant rights

pursuant to § 55–79.74:3; (ii) reserves or succeeds to any special declarant right; or (iii) applies for registration of the condominium. However, for the purposes of clauses (i) and (iii), the term 'declarant' shall not include an institutional lender which acquires title by foreclosure or deed in lieu thereof unless such lender offers to dispose of its interest in a condominium unit not previously disposed of to anyone not in the business of selling real estate for his own account, except as otherwise provided in § 55–79.74:3. The term 'declarant' shall not include an individual who acquires title to a condominium unit at a foreclosure sale.").

bility with respect to condominium developments located in-state, no "inconsistency" is presented in applying the Virginia Condominium Act's provision. *See Taylor,* 536 A.2d at 96.[9] Thus, we conclude that there is no conflict between Virginia and District of Columbia law and therefore Urban Pace may raise the defense authorized in the Virginia statute.[10]

Given that the Virginia Condominium Act applies, the question then becomes whether this statute, and in particular the provision governing liability for condominium developers and their agents, bars the instant action against Urban Pace. Our starting point is the statute's plain language, which is set out *supra. See Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (" 'The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used.' " (quoting *Varela v. Hi-Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc))).

■ The parties have not disputed that Abdo, the property developer, was the declarant within the meaning of the act. Further, it is undisputed that Urban Pace

acted as Abdo's agent in the context of this condominium unit purchase. Therefore, following the plain language of the statute, it appears that the instant tort suit, alleging wrongdoing by Urban Pace, an agent of the declarant, should be brought against Abdo, the declarant.

■ Even if we were to look beyond the plain language, nothing points us in a different direction. This court, like the federal courts, applies the law of a foreign jurisdiction "as either declared by its legislature, or by its highest court." *Atkins v. Industrial Telecommunications A'ssn, Inc.,* 660 A.2d 885, 891 (D.C.1995) (citing *King v. Order of United Commercial Travelers of Am.,* 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948)). But the Virginia Supreme Court has yet to apply or interpret Va.Code Ann. § 55–79.80:1(A).[11] Moreover, although Ms. Barimany and Mr. Dove make several arguments regarding the purpose of the provision, Virginia does not maintain an official legislative history. Ms. Barimany and Mr. Dove point us to commentary to the Uniform Condominium Act. However, language in the uniform act regarding tort liability is strikingly different from the Virginia act.[12] Unlike the

---

9. In *Taylor,* we found "no inconsistency ... because both Maryland and the District of Columbia exclude from mandatory coverage any non-resident who is injured out-of-state." 536 A.2d at 96.

10. As noted *supra,* the two condominium acts are geographically bounded. Given that the condominium property at issue is in Virginia, we apply the Virginia statute here.

11. We are not bound by other Virginia courts' decisions. Nonetheless, we note that a number of Virginia circuit courts have ruled that the Virginia Condominium Act bars liability against anyone other than the developer or the condominium board. *See, e.g., Watson v. Lederman,* 83 Va. Cir. 434, 435 (Va.Cir.Ct. 2011); *Highridge Place Condo. Unit Owner's Ass'n v. Langley,* 72 Va. Cir. 21, 22 (Va.Cir.Ct. 2006). And one circuit court has concluded

that the statute extends protection to those acting as seller's agents to the developer, as Urban Pace did in this case. *See Millisor v. Anchor Point Ventures, L.L.C.,* 77 Va. Cir. 246, 259 (Va.Cir.Ct.2008).

12. The Uniform Condominium Act § 3–111 provides:
 Neither the association nor any unit owner except the declarant is liable for that declarant's torts in connection with any part of the condominium which that declarant has the responsibility to maintain. Otherwise, an action alleging a wrong done by the association must be brought against the association and not against any unit owner. If the wrong occurred during any period of declarant control and the association gives the declarant reasonable notice of and an opportunity to defend against the action, the declarant who then controlled the asso-

Virginia Condominium Act, the Uniform Condominium Act makes no specific mention of the liability of a declarant for wrongdoing by an agent. The Uniform Condominium Act also appears to focus on torts relating to the maintenance of the condominium premises rather than wrongdoing related to the condominium more generally. These omissions distinguish the Virginia Condominium Act from the Uniform Condominium Act and suggest that the Virginia legislature may have specifically deviated from the Uniform Condominium Act to provide more explicit immunization of declarant's agents and more extensive coverage of tort liability. Ultimately, in light of the plain language of the statute, we conclude that Ms. Barimany and Mr. Dove's suit against Urban Pace is barred by § 55–79.80:1(A).

In sum, we hold that the trial court properly applied the Virginia Condominium Act to determine that Urban Pace was immune from liability for the tort of wrongful involvement in litigation.[13] Accordingly, the order granting Urban Pace judgment on the pleadings is

*Affirmed.*

REID, Senior Judge, concurring:

Judge Easterly concludes that: "We need not determine whether the trial court

properly applied Virginia law to all aspects of Ms. Barimany and Mr. Dove's lawsuit in light of our determination that (1) the trial court properly applied the Virginia Condominium Act as it does not conflict with District of Columbia law, and (2) that statute shielded Urban Pace from liability." I fully agree that the Virginia Condominium Act bars appellants' action against Urban Pace LLC. I write separately to express my view that under our traditional choice of law approach, Virginia law governs this action.

First, I highlight certain aspects of the record before us. In the underlying litigation, the Virginia Circuit Court of Arlington ("the Virginia court") determined that "[t]he central issue in the case was whether [Ms.] Barimany and [Mr.] Dove received the revised Public Offering Statement ["amended POS"], and if so when." The Virginia court concluded that they did not receive the amended POS, and that some of the amendments were material. Consequently, Ms. Barimany and Mr. Dove, Virginia residents, prevailed in the breach of contract lawsuit filed against them by Abdo, a Virginia developer. The Virginia court ordered the return of appellants' $58,750 deposit on a condominium unit in a Virginia condominium complex.

---

ciation is liable to the association or to any unit owner: (i) for all tort losses not covered by insurance suffered by the association or that unit owner, and (ii) for all costs which the association would not have incurred but for a breach of contract or other wrongful act or omission. Whenever the declarant is liable to the association under this section, the declarant is also liable for all litigation expenses, including reasonable attorneys fees, incurred by the association. Any statute of limitation affecting the association's right of action under this section is tolled until the period of declarant control terminates. A unit owner is not precluded from bringing an action contemplated by this section because he is a unit owner or a

member or officer of the association. Liens resulting from judgments against the association are governed by Section 3–117 (Other Liens Affecting the Condominium).

13. Because we hold that Urban Pace is immunized from liability by the Virginia Condominium Act, we need not address the additional argument made by Ms. Barimany and Mr. Dove that the jury waiver provision of the Condominium Purchase Agreement did not apply to their suit. We also need not address the merits of Appellee's Motion to Strike Appellants' Incorrect Arguments Not Raised before the Trial Court or in their Opening Brief, as we do not consider those arguments in this opinion. Thus, the motion is denied as moot.

Appellants' amended complaint lodged in the Superior Court of the District of Columbia against Abdo's sales agent, Urban Pace, demanded damages in the form of attorney's fees for the tort of wrongful involvement in litigation. Urban Pace's principal place of business is the District of Columbia, but it also conducted business out of the onsite sales office for the Virginia condominium. The amended complaint alleged not only that Ms. Barimany and Mr. Dove did not receive the amended POS, but also that their signatures on the receipt for the amended POS had been forged.[14] The place of forgery was not identified in the amended complaint.

Where the alleged forgery of the amended POS occurred—the District, Virginia, or some other geographical location—is not answered by the documents that comprise the record in this case. Deposition testimony revealed that some of Urban Pace's sales agents "occupied" and worked out of the Virginia onsite sales center, "met clients there," "provided tours for potential purchasers," and "handled paperwork in terms of contracts, marketing materials." The Virginia court found that an Urban Pace agent "advised [Ms.] Barimany that [she and Mr. Dove] had received a copy [of the amended POS] in April 2007 while in the sales office." An email from Urban Pace Agent Karen Taylor forwarded to Ms. Barimany "a copy of the Condominium Documents Amendment that [she, meaning Ms. Taylor] received in this Office in April," but the email does not indicate where the purported signatures of Ms. Barimany and Mr. Dove took place, or from which office the documents were sent to Ms. Barimany.

Both parties identify the following issue for resolution by this court: whether the trial court erred by deciding that Virginia law applies to the instant action concerning the tort of wrongful involvement in litigation, and the demand of appellants for attorney's fees arising out of the Virginia litigation. I would answer that question directly by concluding that the trial court correctly decided that Virginia law applies to this case.

"We review questions of choice of law on a *de novo* basis." *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995). We follow "the 'governmental interests' analysis, under which we evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts under review." *Id.* (citation omitted). In addition, we consider factors set forth in § 145 of the Restatement (Second) of Conflict of Laws. Section 145(1) provides that:

The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to this occurrence and the parties. . . .

Section 145(2) states that:

Contacts to be taken into account . . . to determine the law applicable to an issue include:

(a) The place where the injury occurred,

(b) The place where the conduct causing the injury occurred,

(c) The domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) The place where the relationship, if any, between the parties is centered.

Section 145 specifies that: "These contacts are to be evaluated according to their rela-

---

**14.** The Virginia court credited the testimony of Ms. Barimany and Mr. Dove, and the court declared that their "position was that they did not sign an acknowledgment of receipt of the revised POS."

tive importance with respect to the particular issue."

As I see it, the essential issue before us may be stated as follows: In a District of Columbia wrongful involvement in litigation tort lawsuit against a Virginia condominium developer's sales agent (who is incorporated in the District of Columbia but who did business in Virginia at the site of the condominium), may appellants (Virginia residents who signed a contract in Virginia to purchase one of the Virginia developer's Virginia condominium units) recoup legal fees incurred in successfully defending themselves in a Virginia court against the Virginia developer who sued them for breach of contract? To examine this issue, we set forth pertinent statutes and case law before considering the respective governmental interests.

Virginia Code § 55–79.80:1 of the Virginia Condominium Act provides in pertinent part: "An action for tort alleging a wrong done (i) by any agent or employee of the declarant ... or (ii) in connection with the condition of any portion of the condominium which the declarant ... has the responsibility to maintain, shall be brought against the declarant...." "Declarant" is defined, in part, as: "any person ... that (i) offers to dispose of his or its interest in a condominium unit not previously disposed of ..., or (iii) applies for registration of the condominium." Va.Code § 55–79.41 (2008). As far as we can discern, the Virginia Supreme Court has not recognized the tort of wrongful involvement in litigation. Rather, for litigants seeking attorneys' fees, Virginia has adhered to the general American rule that "in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff in the litigation of his claim against the defendant are not recoverable." *Rambus, Inc. v. Infineon Tech. AG*, 164 F.Supp.2d 743, 758–9 (E.D.Va.2001) (internal quotation marks and citations omitted). In addition, Virgi-

nia long has followed the principle that "except where the injury is wanton or malicious and exemplary damages are recoverable, the allowance of fees paid counsel for defending the original proceeding is not proper." *Kemp v. Miller*, 166 Va. 661, 186 S.E. 99, 106 (1936). Moreover, "where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred." *Carlson v. Wells*, 281 Va. 173, 705 S.E.2d 101, 109 (2011) (internal quotation marks and citations omitted); *see also Fisher v. Virginia Elec. & Power Co.*, 258 F.Supp.2d 445, 453–54 (E.D.Va.2003).

In contrast, the District of Columbia recognizes the "wrongful involvement in litigation doctrine, which works an exception to the American Rule [that each party pay its own fees]." *Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*, 985 A.2d 443, 458 (D.C.2009) (internal quotation marks and citation omitted); *see also Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.*, 451 A.2d 66, 69 (D.C.1982) (under this exception to the American Rule, "a party must show that: (1) the plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action; (2) the litigation ordinarily must have been with a third party and not with the defendant in the present action; and (3) the plaintiff must have become involved in such litigation because of some tortious act of the defendant") (citation omitted).

We turn now to the application of the Restatement factors governing the governmental interests analysis. First, as to the place of the injury, it is reasonably clear that the injury occurred in Virginia. The litigation between Abdo and appellants, which caused appellants to incur the legal fees they seek to recover in this litigation,

took place in a Virginia court. Although Ms. Barimany and Mr. Dove retained a law firm based in the District, a Virginia firm also represented them,[15] and appellants spent money in Virginia for services rendered in Virginia.[16] We disagree with Urban Pace's assertion that the place of injury is not critical in this case. The place of injury—Virginia—was not fortuitous as it was in *Zhou v. Jennifer Mall Rest.,* 534 A.2d 1268 (D.C.1987). The contract between Abdo and appellants (Virginia residents), which had been executed in Virginia, concerned a Virginia condo unit. Thus the place of appellants' injury was not fortuitous; rather it was readily predictable that a Virginia court would be selected for Abdo's lawsuit.

With respect to the second and third factors, the record does not substantiate Urban Pace's implicit assumption that the forgery took place in the District because that is where Urban Pace is incorporated and has its principal place of business. Urban Pace also conducted business in an onsite location at the Virginia condominium complex. Furthermore, there is no allegation as to where the alleged forgery of appellants' signatures took place, or where the receipt for the amended POS was created. Thus, no allegation points to a strong District governmental interest solely because Urban Pace is incorporated in the District and has an office here. Indeed Virginia has the stronger interest with regard to the particular question at issue: whether Urban Pace wrongfully caused appellants to incur legal expenses in the Virginia court litigation.

Application of the fourth factor shows that Virginia has the greater connection to this case. The parties dealings were centered in Virginia—the signing of the contract, the subject of the contract (the condominium unit), and Abdo's lawsuit against appellants. In fact, there is no indication in the record that appellants ever visited Urban Pace's District offices or otherwise dealt with Urban Pace in the District.

The comparison of Virginia's and the District's respective governmental interests clearly shows that Virginia has the most substantial interest. Virginia's policy, embedded in its Condominium Act, requires a person to sue a "declarant," in this case Abdo, for any alleged wrong on the part of Abdo's agent, Urban Pace. Virginia's Supreme Court has not interpreted the word "declarant" in its Condominium Act to include an agent. In contrast, the District's policy allows a person to sue the agent under the District's recognized tort of wrongful involvement in litigation.

Furthermore, Virginia generally does not permit recovery of attorney's fees unless "the injury is wanton or malicious and exemplary damages are recoverable." *Kemp, supra,* 186 S.E. at 106. Where there has been a breach of contract by the declarant, however, Virginia law would permit a person, appellants in this case, to seek "reasonable" attorney's fees that have been "reasonably incurred." *Carlson, supra,* 705 S.E.2d at 109. In short, Virginia has specific, longstanding policies regarding the recovery of attorney's fees, and neither its legislature nor its Supreme Court has altered those policies by permitting persons to sue agents directly for legal fees under its Condominium Act, or

---

15. How much of the $300,000 in legal fees went to the Virginia law firm is not clear from the record.

16. Appellants also allege that they suffered other injuries, such as a delay in recovering the earnest money they provided Abdo under

the contract, certain unspecified accounting and storage fees, and emotional distress. Because Abdo, Ms. Barimany, and Mr. Dove all were Virginia domiciliaries during the Virginia court litigation, these damages almost surely occurred in Virginia.

by bringing an independent action against agents under the theory that they are embraced within the definition of "declarant."

Under the circumstances of this case, however, the District has a general interest in regulating the behavior of Urban Pace, not only in this city but also in nearby Virginia locations, because of Urban Pace's incorporation in the District. But, Virginia has an interest in making sure that developers like Abdo hire agents, such as Urban Pace, who conduct their business properly in Virginia and with respect to Virginia residents.

In a case involving a choice of law issue between Maryland and the District, *Estrada v. Potomac Electric Power Co.*, 488 A.2d 1359 (D.C.1985), we acknowledged that the District "has an interest in the manner in which its resident corporations conduct themselves outside our narrow boundaries." *Id.* at 1365. We also made clear that "this court's task is not to find that the District has *an* interest in the application of its law, but rather which jurisdiction has the *most substantial interest* in having its law applied to the issue," *id.* (emphasis in original): in this case, whether an agent of a declarant (Virginia developer Abdo) caused appellants, Virginia residents, to incur legal expenses in a Virginia court while defending against a breach of contract lawsuit regarding a Virginia condominium unit.

On this record, I have no doubt that Virginia has the most substantial interest in having its law applied to this case. Therefore, like the trial court, I would resolve the issue directly and in favor of Virginia law.